UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

725 EATERY CORP., etc., *et ano.,*                  :
                         Plaintiffs,

                                       :

            - against -                  :          Civil Action No.
                                       :          02 CV 4431 (WHP)

THE CITY OF NEW YORK, et al.,
                         Defendants.    :
----------------------------------------------------------------X

59 MURRAY ENTERPRISES INC., etc., *et al.,*          :
                         Plaintiffs,

                                       :

            - against -                  :          Civil Action No.
                                       :          02 CV 4432 (WHP)

THE CITY OF NEW YORK, et al.,
                         Defendants.    :
----------------------------------------------------------------X

CLUB AT 60TH STREET, INC., etc., *et al.,*          :
                         Plaintiffs,

                                       :

            - against -                  :          Civil Action No.
                                       :          02 CV 8333 (WHP)

THE CITY OF NEW YORK,
                         Defendant.    :
----------------------------------------------------------------X
336 LLC., etc., *et al.,*                          :
                         Plaintiffs,

                                       :

            - against -                  :          Civil Action No.
                                       :          18 CV 3732 (WHP)

THE CITY OF NEW YORK,
                         Defendant.    :
----------------------------------------------------------------X

**NOTICE OF FILING OF PLAINTIFFS' JOINT REPLY APPENDIX (Vol. I of IV)
IN SUPPORT OF PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**PLEASE TAKE NOTICE,** that Plaintiffs hereby file following Joint Reply Appendix (Vol. I of IV) in support of their pending Motion for Preliminary Injunction in the above-captioned actions.

Dated: New York, New York
March 15, 2019

*Respectfully,*

**DANIEL A. SILVER**
**SILVER & SILVER**
One Liberty Square
New Britain, Connecticut 06050-0698
(860) 225-3518

- and-

**JENNIFER KINSLEY**
Kinsley Law Office
Post Office Box 19478
Cincinnati, Ohio 45219
(513) 708-2595

*Attorneys for Plaintiffs*
*725 Eatery Corp., etc., et ano.*

By: s/Jennifer Kinsley
Jennifer Kinsley

**EDWARD S. RUDOFSKY**
**ZANE and RUDOFSKY**
601 West 26th Street, # 1315
New York, New York 10001
(212) 245-2222

*Attorneys for Plaintiffs*
*59 Murray Enterprises, Inc., etc.*

By: s/Edward S. Rudofsky
Edward S. Rudofsky

**JOHN H. WESTON**
**G. RANDALL GARROU**
**WESTON, GARROU & MOONEY**
12121 Wilshire Boulevard, Suite 525
Los Angeles, CA 90025-1176
(310) 442-0072

- and -

**ALAN M. ABRAMSON**
**ABRAMSON & MORAK**
35 Worth Street
New York, New York 10013
(212) 226-7098

*Attorneys for Plaintiffs*
*Club At 60th Street, Inc., etc., et al.*

By: s/John Weston
John Weston

**ERICA DUBNO**
**FAHRINGER & DUBNO**
767 Third Avenue, Suite 3600
New York, New York 10017
(212) 319-5351

*Attorney for Plaintiffs 336 LLC, et al.*

By: s/Erica T. Dubno
Erica T. Dubno

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

725 EATERY CORP., etc., *et ano.,*
                              Plaintiffs,     :

                                     :

        - against -                          Civil Action No.
                                     :        02 CV 4431 (WHP)

THE CITY OF NEW YORK, et al.,
                             Defendants.   :
-------------------------------------------------------------X

59 MURRAY ENTERPRISES INC., etc., *et al.,*
                              Plaintiffs,     :

                                     :

        - against -                          Civil Action No.
                                     :        02 CV 4432 (WHP)

THE CITY OF NEW YORK, et al.,
                              Defendants.   :
-------------------------------------------------------------X

CLUB AT 60TH STREET, INC., etc., *et al.,*
                              Plaintiffs,     :

                                     :

        - against -                          Civil Action No.
                                     :        02 CV 8333 (WHP)

THE CITY OF NEW YORK,
                              Defendant.   :
-------------------------------------------------------------X

336 LLC., etc., *et al.,*
                              Plaintiffs,     :

                                   :

        - against -                          Civil Action No.
                                     :        18 CV 3732 (WHP)

THE CITY OF NEW YORK,
                              Defendant.   :
-------------------------------------------------------------X

**PLAINTIFFS' JOINT REPLY APPENDIX (Vol. I of IV)
IN SUPPORT OF PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

## PLAINTIFFS' JOINT REPLY APPENDIX
### Vol. I of IV
### (pp. 1882-1981)

Per the Court's Order of November 7, 2018, Plaintiffs in each of the four above-entitled actions hereby submit their unitary Joint Reply Appendix consisting exclusively of evidentiary documents upon which some or all of the Plaintiffs may choose to rely in their Reply to Defendant's Response to Plaintiffs' Motion for Preliminary Injunction. The inclusion of documents in this Joint Reply Appendix does not automatically signify an endorsement or promotion of any of these documents by any individual Plaintiff or group of Plaintiffs.  That will depend on specific adoption of any of these documents by any Plaintiffs or Group of Plaintiffs in documents they may file with the Court.

The reference below to the "Club Plaintiffs" refers to all the Plaintiffs in Action Nos. 02 CV 4431, 02 CV 4432 and 02 CV 8333.  The reference below to the "Bookstore Plaintiffs" refers to all the Plaintiffs in Action No. 18 CV 3732.

### TABLE OF CONTENTS

| Tab No. | Description of Document | Joint Reply Appendix Starting Page # |
|---------|------------------------|--------------------------------------|
| | **DOCUMENTS SUBMITTED BY CLUB PLAINTIFFS** | |
| | **Vol. I of IV (pp. 1882-1981)** | |
| **A** | **Club Plaintiffs' First Supplemental Request to Take Judicial Notice** | **1882** |

| | | |
|---|---|---|
| | *Exhibit 2-A*: Resolution 0208-1998, approving Text Amendment N 980135 ZRY ("1998 Amendments"), as published in Vol. I of Proceedings of the Council of the City of New York for the period January 7, 1998 to June 24, 1998 | 1891 |
| | *Exhibit 3-A* :Resolution 2096-2001, approving Text Amendment N 010508 ZRY ("2001 Amendments"), as signed by the Clerk of the City of New York | 1914 |
| | *Exhibit 4-A*: Portions of NYC Council Resolution 586-2004 amending, AZR 32-01 & 42-01 regarding adult businesses ("2004 Amendments"), as published in Vol. II, Part I, of Proceedings of the Council of the City of New York for the period July 21, 2004 to December 15, 2004 | 1933 |
| | *Exhibit 5-A*: Portions of NYC Council Resolution 0499-2010 amending, AZR 32-01 & 42-01 regarding adult businesses) ("2010 Amendments"), as published in Vol. II, Part I, of Proceedings of the Council of the City of New York for the period July 29, 2010 to December 20, 2010 | 1941 |
| | *Exhibit 82:* Excerpts from NYAC Title 28, Chapter 1, Subchapter 1, Article 101 (entitled "General") | 1950 |
| | *Exhibit 83*: Excerpts from NYAC Title 28, Chapter 1, Subchapter 1, Article 102 (entitled "Applicability") | 1952 |
| | *Exhibit 84*: Excerpts from NYAC Title 28, Chapter 1, Subchapter 1, Article 104 (entitled "Construction Documents") | 1954 |
| | *Exhibit 85*: Excerpts from NYAC Title 28, Chapter 1, Subchapter 1, Article 105 (entitled "Permits") | 1960 |
| | *Exhibit 86*: Excerpts from NYAC Title 28, Chapter 1, Subchapter 1, Article 116 (entitled "Inspections and Signoff of Completed Work") | 1966 |
| | *Exhibit 87*: Excerpts from NYAC Title 28, Chapter 1, Subchapter 1, Article 117 (entitled "Places of Assembly") | 1968 |
| | *Exhibit 88*: Excerpts from NYAC Title 28, Chapter 1, Subchapter 1, Article 118 (entitled "Certificates of Occupancy") | 1970 |
| B | Reply Declaration of Michael Berzak Re: Permitting Issues Presented in Plaintiffs' Motion for Preliminary Injunction | 1974 |

| C | Declaration of G. Randall Garrou Re Source of City's NYCAC Provisions Utilized by Plaintiffs | 1978 |
|---|---|---|
| | | |
| | **Vol. II of IV**<br>**(pp. 1982-2004)** | |
| D | Reply Declaration of Michael Berzak Re: Adult Business Sites in Support of Plaintiffs' Motion for Preliminary Injunction – Part One | 1982 |
| | | |
| | **Vol. III of IV**<br>**(pp. 2005-2023)** | |
| D | Reply Declaration of Michael Berzak Re: Adult Business Sites in Support of Plaintiffs' Motion for Preliminary Injunction – Part Two | 2005 |
| | | |
| | **Vol. IV of IV**<br>**(pp. 2024-2098)** | |
| D | Reply Declaration of Michael Berzak Re: Adult Business Sites in Support of Plaintiffs' Motion for Preliminary Injunction – Part Three | 2024 |
| | *Exhibit 1K(Amended)*: Map Showing Maximum Number and Location of Manhattan Relocation Areas | 2030 |
| | *Exhibit 89*:  New York Times Article | 2032 |
| | | |
| | **DOCUMENTS SUBMITTED BY BOOKSTORE PLAINTIFFS** | |
| E | Reply Declaration of Dr. Elliott D. Sclar | 2039 |

Dated:        New York, New York
              March 15, 2019

Respectfully submitted,

**DANIEL A. SILVER**
**SILVER & SILVER**
One Liberty Square
New Britain, Connecticut 06050-0698
(860) 225-3518

- and -

**JENNIFER KINSLEY**
Kinsley Law Office
Post Office Box 19478
Cincinnati, Ohio 45219
(513) 708-2595
kinsleylawoffice@gmail.com

*Attorneys for Plaintiffs*
*725 Eatery Corp., etc., et ano.*

By: _s/ Jennifer M. Kinsley_
      Jennifer M. Kinsley


**EDWARD S. RUDOFSKY**
**ZANE and RUDOFSKY**
601 West 26th Street, # 1315
New York, New York  10001
(212) 245-2222

*Attorneys for Plaintiffs*
*59 Murray Enterprises, Inc., et al.*


By: _s/Edward S. Rudofsky_
      Edward S. Rudofsky

**JOHN H. WESTON**
**G. RANDALL GARROU**
**WESTON, GARROU & MOONEY**
12121 Wilshire Boulevard, Suite 525
Los Angeles, CA 90025-1176
(310) 442-0072

- and -

**ALAN M. ABRAMSON**
**ABRAMSON & MORAK**
35 Worth Street New York, NY 10013
(212) 226-7098

*Attorneys for Plaintiffs*
*Club At 60th Street, Inc., etc., et al.*


By: s/John Weston
     John Weston

**ERICA DUBNO**
**FAHRINGER & DUBNO**
767 Third Avenue, Suite 3600
New York, New York 10017
(212) 319-5351

*Attorney for Plaintiffs 336 LLC, et al.*

By: s/Erica T. Dubno
     Erica T. Dubno

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
689 EATERY CORP., etc., *et ano.*,                    :

                     Plaintiffs,     :

          - against -                         :          Civil Action No.
                                      02 CV 4431 (WHP)
THE CITY OF NEW YORK, et al.,            :

                    Defendants.  :
-----------------------------------------------------------X
59 MURRAY ENTERPRISES INC., etc., *et al.,* :

                     Plaintiffs,     :

          - against -                         :          Civil Action No.
                                      02 CV 4432 (WHP)
THE CITY OF NEW YORK, et al.,            :

                    Defendants.  :
-----------------------------------------------------------X
CLUB AT 60TH STREET, INC., etc.,*et al.,*    :

                     Plaintiffs,     :

          - against -                         :          Civil Action No.
                                      02 CV 8333 (WHP)
THE CITY OF NEW YORK,                     :

                    Defendant.  :
-----------------------------------------------------------X

## **CLUB PLAINTIFFS' FIRST SUPPLEMENTAL JUDICIAL NOTICE REQUEST**

1

Club Plaintiffs, by their undersigned attorneys, hereby supplement their Request to Take Judicial Notice filed November 21, 2018 ("RJN"), as follows:

1.     By letter dated January 30, 2019, Club Plaintiffs advised the Court of certain potential issues with regard to the finality of RJN Exhibits 2, 3 and 4, and modified the RJN, with respect to those exhibits, to request that the Court take judicial notice only of the fact that the RJN Exhibits 2, 3 and 4 (as included in the RJN) were true and accurate copies of certain resolutions as they appear on the website of the New York City Council.

2.     Subsequent to transmitting the letter of January 30, 2019, Club Plaintiffs realized that the RJN should also be deemed modified to provide that RJN Exhibit 5 (as included in the RJN) is a true and accurate copy of a resolution as it appears on the website of the New York City Council but is not a signed or certified copy of the actual resolution as passed by the Council, and hereby modify that request accordingly.

3.     Club Plaintiffs have now obtained: (a) a copy of the final version of RJN Exhibit 3 as signed by the City Clerk, and (b) final copies of RJN Exhibits 2, 4 and 5 as published in the Proceedings of the Council of the City of New York under the certification of the City Clerk.

4.     Club Plaintiffs accordingly request that the Court take judicial notice of the following pursuant to Federal Rule of Evidence 201:

2

1883

| Exhibit 2-A | Resolution 0208-1998, approving Text Amendment N 980135 ZRY ("1998 Amendments"), as published in Vol. I of Proceedings of the Council of the City of New York for the period January 7, 1998 to June 24, 1998 |
|---|---|
| Exhibit 3-A | Resolution 2096-2001, approving Text Amendment N 010508 ZRY ("2001 Amendments"), as signed by the Clerk of the City of New York |
| Exhibit 4-A | Portions of NYC Council Resolution 586-2004 amending, AZR 32-01 & 42-01 regarding adult businesses ("2004 Amendments"), as published in Vol. II, Part I, of Proceedings of the Council of the City of New York for the period July 21, 2004 to December 15, 2004 |
| Exhibit 5-A | Portions of NYC Council Resolution 0499-2010 amending, AZR 32-01 & 42-01 regarding adult businesses) ("2010 Amendments"), as published in Vol. II, Part I, of Proceedings of the Council of the City of New York for the period July 29, 2010 to December 20, 2010 |

5.     Club Plaintiffs have also learned that all of the portions of the New York City Administrative Code ("NYAC") set forth in their Judicial Notice Request as Exhibits 16 - 19 (at PJA pp. 431-461), and specifically described below, were repealed in 2008, although the City's website publishing the repeal of these provisions was not updated to reflect those changes until after Plaintiffs filed their Judicial Notice Request.  The repealed provisions are:

   a. NYAC Title 27, Chapter 1, Subchapter 1, Article 9 (entitled "Approval of Plans");

   b. NYAC Title 27, Chapter 1, Subchapter 1, Article 10 (entitled "Permits");

3

    c.  NYAC Title 27, Chapter 1, Subchapter 1, Article 19 (entitled "Issuance of Permits"); and

    d.  NYAC Title 27, Chapter 1, Subchapter 1, Article 22, § 27-217 (entitled "Change of Occupancy or Use").

6.    As a result, Plaintiffs ask the Court to judicially notice only that the provisions referenced in paragraph 5 were all in effect prior to their repeal in 2008.

7.    Because most of the repealed provisions were reenacted in 2008 and placed in Title 28 of the NYAC, and remain relevant to this litigation, Plaintiffs now supplement their judicial notice request to request that the Court take judicial notice that the following are all *current* provisions of the NYAC:

Exhibit 82    The following provisions from NYAC Title 28, Chapter 1, Subchapter 1, Article 101 (entitled "General"):

    i.  § 28-101.1 - Title; and

    ii.  § 28-101.4.5 - Work that increases existing floor surface area of a prior code building by more than 110 percent.

Exhibit 83    The following provisions from NYAC Title 28, Chapter 1, Subchapter 1, Article 102 (entitled "Applicability"):

    i.  § 28-102.2 - Other laws; and

    ii.  § 28-102.4 - Existing buildings.

1885

Exhibit 84    The following provisions from NYAC Title 28, Chapter 1, Subchapter 1, Article 104 (entitled "Construction Documents"):

    i.    § 28-104.1 - General;

    ii.    § 28-104.1.1 - Construction documents subject to the New York city fire code;

    iii.    § 28-104.2 - Application for approval of construction documents;

    iv.    § 28-104.2.7 - Time period for review;

    v.    § 28-104.2.7.1 - Notification of approval;

    vi.    § 28-104.2.8 - Notification of rejection;

    vii.    § 28-104.6 - Applicant;

    viii.    § 28-104.7.11 - Additional information;

    ix.    § 28-104.7.12 - Waiver of certain documents;

    x.    § 28-104.8.1 - Applicant statements; and

    xi.    § 28-104.8.2 - Owner statement.

Exhibit 85    The following provisions from NYAC Title 28, Chapter 1, Subchapter 1, Article 105 (entitled "Permits"):

    i.    § 28-105.1 - General;

    ii.    § 28-105.2 - Classification of work permits;

   iii. § 28-105.4.2.1 - Definitions;

   iv. § 28-105.5 - Application for permit;

   v. § 28-105.5.1 - Applicant for permit;

   vi. § 28-105.5.2 - Owner statement;

   vii. § 28-105.7 - Time limitation of applications;

   viii. § 28-105.8 - Validity of permit;

   ix. § 28-105.8.1 - Duration of permit; and

   x. § 28-105.9 - Expiration.

Exhibit 86 The following provisions from NYAC Title 28, Chapter 1, Subchapter 1, Article 116 (entitled "Inspections and Sign-off of Completed Work"):

   i. § 28-116.1  General;

   ii. § 28-116.2.1  Preliminary inspection;

   iii. § 28-116.2.4  Final inspection; and

   iv. § 28-116.4  Sign-off of completed work.

Exhibit 87 The following provisions from NYAC Title 28, Chapter 1, Subchapter 1, Article 117 (entitled "Places of Assembly"):

   i. § 28-117.1 - Place of assembly certificate of operation; and

   ii. § 28-117.1.2 - New certificate required.

1887

Exhibit 88      The following provisions from NYAC Title 28, Chapter 1, Subchapter 1, Article 118 (entitled "Certificates of Occupancy"):

      i.    § 28-118.1 - General provisions;

      ii.    § 28-118.3.1 - Change of occupancy or use;

      iii.    § 28-118.3.2 - Changes inconsistent with existing certificate of occupancy;

      iv.    § 28-118.3.3 - Changes to exits;

      v.    § 28-118.4.1 - Applicant;

      vi.    § 28-118.4.2 - Statement of compliance; and

      vii.    § 28-118.6 - Issuance of certificate of occupancy.

8.   In addition, Plaintiffs request the Court to judicially notice the legislative facts that:

    a.  Prior to 2008, the NYAC contained a provision (§ 27-191) (set forth at p. 448-449 of Plaintiffs' Joint Appendix) imposing a 40 day time limit on the Department of Buildings to issue a building alteration permit once all plan approvals had been obtained and a proper and complete building alteration permit application had been filed.

b. Following the repeal of that provision in 2008, the City did not replace that with any other provision imposing any objectively measurable time limit upon DOB for issuance of a building alteration permit following approval of all construction documents or plans and following submission of a proper and complete application for such a permit, and there is no other provision in the NYCAC imposing such a time limit.

Dated:       New York, New York
             March 15, 2019

                                        *Respectfully,*

                                        **DANIEL A. SILVER**
                                        **SILVER & SILVER**
                                        One Liberty Square
                                        New Britain, Connecticut 06050-0698
                                        (860) 225-3518

                                        - and -

                                        **JENNIFER KINSLEY**
                                        Kinsley Law Office
                                        Post Office Box 19478
                                        Cincinnati, Ohio 45219
                                        (513) 708-2595

                                        *Attorneys for Plaintiffs*
                                        *725 Eatery Corp., etc., et ano.*

                                        By: _s/Daniel A. Silver_____
                                              Daniel A. Silver

1889

**EDWARD S. RUDOFSKY**
**ZANE and RUDOFSKY**
601 West 26th Street, # 1315
New York, New York 10001
(212) 245-2222

*Attorneys for Plaintiffs*
*59 Murray Enterprises, Inc., etc.*
*et al.*

By: s/Edward S. Rudofsky
  Edward S. Rudofsky


**JOHN H. WESTON**
**G. RANDALL GARROU**
**WESTON, GARROU & MOONEY**
12121 Wilshire Boulevard,
  Suite 525
Los Angeles, CA 90025-1176
(310) 442-0072

- and -

**ALAN M. ABRAMSON**
**ABRAMSON & MORAK**
35 Worth Street New York, NY 10013
(212) 226-7098

*Attorneys for*
*Club At 60th Street, Inc., etc., et al.*

By: s/John Weston
  John H. Weston

9

# Exhibit 2-A

Resolution 0208-1998

# PROCEEDINGS
## OF THE
## COUNCIL
## OF THE
## CITY OF
## NEW YORK

# VOL. I

## JANUARY 7, 1998
## TO
## JUNE 24, 1998

# CERTIFICATE

CITY OF NEW YORK

OFFICE OF THE CITY CLERK

Pursuant to section forty-eight of the New York City Charter, I hereby certify that this volume was printed under my direction and that the contents thereof are correct and authentic transcripts of the original record of proceedings of the Council on file in this office.

CARLOS CUEVAS

City Clerk, Clerk of the Council



Section forty-eight of the New York City Charter reads in part as follows:

§ 48 * * * The city clerk shall have charge of all the papers and documents of the city, except as are by law committed to the keeping of the several departments or of other officers. He shall keep the record of the proceedings of the council. * * * Copies of all papers duly filed in his office, and transcripts thereof, and of the records of the proceedings of the council and copies of the laws, ordinances and local laws of the city, certified by him under the corporate seal of the city, shall be admissible in evidence in all courts and places in the same manner and for the same purpose as papers or documents similarly authenticated by clerk of the county. * * *

April 8, 1998                                   1126

    To modify signage regulations in the Zoning Resolution by removing or reformatting most of the exemptions contained in the definition of "sign" and replace them with a single exemption; to clarify the definition of "advertising sign" to be only signs referencing commercial activity conducted on other zoning lots; to delete the definition of "business signs" as necessary.

    Accordingly, Your Committee recommends its adoption.

    In connection herewith, Council Members Eisland and McCaffrey offered the following resolution:

Res. No. 208

**Resolution approving the decision of the City Planning Commission on Application No. N 980135 ZRY, amendments to the text of the Zoning Resolution concerning signs (L.U. No. 91).**

By Council Members Eisland and McCaffrey

    **Whereas,** the City Planning Commission filed with the Council on February 26, 1998 its decision dated February 18, 1998 (the "Decision"), on the application submitted by the Department of City Planning, pursuant to Section 201 of the New York City Charter, for amendments to the text of the Zoning Resolution (Application No. N 980135 ZRY) (the "Application");

    **Whereas,** the Decision is subject to review and action by the Council pursuant to Section 197-d(b)(1) of the City Charter;

    **Whereas,** the Council held a public hearing on the Decision and Application on March 16 and April 1, 1998;

    **Whereas,** the Council has considered the land use implications and other policy issues relating to the Decision and Application; and

    **Whereas,** the Council has considered the relevant environmental issues and the Negative Declaration, issued on October 20, 1997 (CEQR No. 98DCP022Y);

**Resolved:**

    The Council finds that the action described herein will have no significant effect on the environment;

    Pursuant to Sections 197-d and 200 of the City Charter and on the basis of the Decision and Application the Council approves the Decision; and

    The Zoning Resolution of the City of New York, effective as of December 15, 1961, and as subsequently amended, is further amended as follows:

1127                                    April 8, 1998

Matter in *italics* is new, to be added;

Matter in ~~strikeout~~ is old, to be deleted;

Matter within #   # is defined in Section 12-10;

* * * indicates where unchanged text appears in the Zoning Resolution

Text not in *italics* or strikeout is to be readopted

12-10
DEFINITIONS
                                    * * *

Advertising sign—see Sign, advertising

                                    * * *

~~Business sign—see Sign, business~~

                                    * * *

Flashing sign—see Sign, flashing

                                    * * *

Illuminated sign—see Sign, illuminated

                                    * * *

Sign

    A "sign" is any writing (including letter, word, or numeral), pictorial representation (including illustration or decoration), emblem (including device, symbol, or trademark), flag, (including banner or pennant), or any other figure of similar character, that:

(a)  is a structure or any part thereof, or is attached to, painted on, or in any other manner represented on a #building or other structure#;

(b)  is used to announce, direct attention to, or advertise; and

(c)  is visible from outside a #building#.  A #sign# shall include writing, representation, or other figures of similar character, within a #building#, only when illuminated and located in a window.

    However, non-#illuminated# signs containing solely non-commercial copy with a total #surface area# not exceeding 12 square feet on any #zoning lot#, including memorial tablets or signs displayed for the direction or convenience of the public, ~~The follow-~~ ~~ing~~ shall not be subject to the provisions of this Resolution~~:~~.

~~(1)~~ ~~Signs of a duly constituted governmental body, including traffic or similar regulato-~~ ~~ry devices, legal notices, or warnings at railroad crossings;~~

~~(2)~~ ~~Flags or emblems of a political, civic, philanthropic, educational or religious organi-~~ ~~zation;~~

April 8, 1998                                 1128

~~(3)  Temporary signs announcing a campaign, drive, or event of the above organizations;~~

~~(4)  Memorial signs or tablets;~~

~~(5)  Signs denoting architect, engineer, or contractor when placed on construction sites and not exceeding 25 square feet in area;~~

~~(6)  Signs required to be maintained by law or governmental order, rule, or regulation, with a total #surface area# not exceeding ten square feet on any #zoning lot#;~~

~~(7)  Small signs displayed for the direction or convenience of the public, including signs that identify rest rooms, freight entrances, or the like, with a total #surface area# not exceeding five square feet on any #zoning lot#.~~

Sign, advertising

An "advertising sign" is a #sign# that directs attention to a business, profession, commodity, service or entertainment conducted, sold, or offered elsewhere than upon the same #zoning lot# and is not #accessory# to a #use# located on the #zoning lot#.

~~Sign, business (12/15/61)~~

~~A "business sign" is an #accessory sign# that directs attention to a profession, business, commodity, service or entertainment conducted, sold, or offered upon the same #zoning lot#.~~

*  *  *

Sign, flashing (12/15/61)

A "flashing sign" is any #illuminated sign#, whether stationary, revolving or rotating, that exhibits changing light or color effects, provided that revolving or rotating #signs# that exhibit no changing light or color effects other than those produced by revolution or rotation, shall be deemed #flashing signs# only if they exhibit sudden or marked changes in such light or color effects.

#Illuminated signs# that indicate the time, temperature, weather or other similar information shall not be considered #flashing signs#, provided that:

(a)  the total #surface area# of such #sign# is not greater than 16 square feet;

(b)  the vertical dimension of any letter or number is not greater than 24 inches; and

(c)  color or intensity of light is constant except for periodic changes in the information displayed, which occur not more frequently than once every minute.

Sign, illuminated (12/15/61)

An "illuminated sign" is a #sign# designed to give forth any artificial light or reflect such light from an artificial source.

1896

1129                                              April 8, 1998

Sign, surface area of—see Surface area (of a sign)

Sign with indirect illumination (12/15/61)

A "sign with indirect illumination" is any #illuminated# non-#flashing sign# whose illumination is derived entirely from an external artificial source and is so arranged that no direct rays of light are projected from such artificial source into #residences# or #streets#.

\* \* \*

Surface area (of a sign)

The "surface area" of a #sign# shall be the entire area within a single continuous perimeter enclosing the extreme limits of writing, representation, emblem, or any figure of similar character, together with any material or color forming an integral part of the display or used to differentiate such #sign# from the background against which it is placed.  In any event, the supports or uprights on which such #sign# is supported shall not be included in determining the #surface area# of a #sign#.

When two #signs# of the same shape and dimensions are mounted or displayed back to back and parallel on a single free-standing structural frame, only one of such #signs# shall be included in computing the total #surface area# of the two #signs#.

When a double-faced #sign# projects from the wall of a #building#, and its two sides are located not more than 28 inches apart at the widest point and not more than 18 inches apart at the narrowest point, and display identical writing or other representation, the #surface area# shall include only one of the sides.  Any additional side of a multi-faced #sign# shall be considered as a separate #sign# for purposes of computing the total #surface area# of the #sign#.

\* \* \*

22-30
SIGN REGULATIONS

\* \* \*

22-32
Permitted Non-Illuminated Accessory Signs

R1 R2 R3 R4 R5 R6 R7 R8 R9 R10

In all districts, as indicated, non-#illuminated accessory ~~business~~ signs# are permitted as set forth in this Section, subject to the provisions of Section 22-34 (Additional Regulations).

\* \* \*

22-33
Signs on Lots Containing Certain Community Facilities

April 8, 1998                                        1130

22-331

Permitted ~~I~~illuminated ~~A~~accessory ~~S~~signs for ~~H~~hospitals and ~~R~~related ~~F~~facilities

R1 R2 R3 R4 R5 R6 R7 R8 R9 R10

In all districts, as indicated, for hospitals and related facilities #illuminated# non-#flashing accessory ~~business~~ signs# are permitted in all districts, subject to Section 22-34 (Additional Regulations). Any number of #illuminated# non-#flashing# identification or directional #signs# are permitted, provided that the total #surface area# in square feet of said #illuminated signs# or the combined total #surface area# in square feet of the #illuminated# and non-#illuminated# identification or directional #signs# does not exceed 25 square feet on any one #street# frontage or 15 percent of such #street# frontage in feet, whichever is less, and provided further that the Commissioner of Buildings determines that such #signs# are so located as to cause a minimum amount of light to be projected on to abutting or adjacent #residences#. In addition to #illuminated# or non-#illuminated accessory ~~business~~ signs#, one illuminated non-flashing directory or bulletin board or combination thereof is permitted in lieu of a non-illuminated directory or bulletin board or combination thereof provided that the total #sign# area does not exceed 50 square feet and provided further that the Commissioner of Buildings determines that such #sign# is so located as to minimize the amount of light projected on the abutting or adjacent #residences#.

22-332

Flags, banners or pennants on lots containing certain community facilities

R1 R2 R3 R4 R5 R6 R7 R8 R9 R10

In all districts, as indicated, flags, banners or pennants other than those that are #advertising signs#, located on any #zoning lot# used primarily for #community facility uses# of a civic, philanthropic, educational or religious nature, are permitted without limitation.

*  *  *

22-35

Advertising Signs on Waterways

No moving or stationary "advertising sign" shall be displayed on a vessel plying waterways adjacent to #Residence Districts# and within view from an arterial highway. For the purposes of this Section, arterial highways shall include all highways which are shown on the Master Plan of Arterial Highways and Major Streets as "principal routes," "parkways," or "toll crossings" and which have been designated by the City Planning Commission as arterial highways to which the provisions of this Section shall apply.

For the purposes of this Section "advertising sign" is a sign which directs attention to a profession, business, commodity, service or entertainment conducted, sold, or offered elsewhere than upon the premises of the vessel~~, and shall not include signs, symbols or flags identifying the vessel, its owners or operators~~ and is not #accessory# to a #use# on such vessel.

*  *  *

1898

1131                                                April 8, 1998

32-421
Limitation on floors occupied by non-residential uses

C1 C2 C3

In the districts indicated, in any #building#, or portion of a #building# occupied on one or more of its upper #stories# by #residential uses# listed in Use Group 1 or 2 or by #community facility uses# listed in Use Group 3 or 4, no non-#residential uses# listed in Use Group 6, 7, 8, 9 or 14 shall be located above the level of the first #story# ceiling, provided, however, that permitted #business# signs, other than #advertising signs#, accessory# to such non-#residential uses# may extend to a maximum height of two feet above the level of the finished floor of the second #story#, but in no event higher than six inches below the lowest window sill of the second #story#. In any other #building#, or portion thereof, not more than two #stories# may be occupied by non-#residential uses# listed in Use Group 6A, 6B, 6C, 6F, 7, 8, 9 or 14. Non-#residential uses# permitted by the applicable district regulations may occupy two #stories# in any new #development# in C1 or C2 Districts mapped within R9 or R10 Districts or in C1-8, C1-9, C2-7 or C2-8 Districts.

32-422
Location of floors occupied by non-residential uses

C4 C5 C6

In the districts indicated, in any #building#, or portion of a #building# occupied by #residential uses# listed in Use Group 1 or 2, non-#residential uses# listed in Use Group 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15 or 16 may be located only on a #story# below the lowest #story# occupied in whole or in part by such #residential uses#, except that this limitation shall not preclude the location of any such non-#residential use# below the level of the first #story# ceiling, or the extension of a permitted #business# sign, other than #advertising sign#, accessory# to such non-#residential use# to a maximum height of two feet above the level of the finished floor of the second #story#, but in no event higher than six inches below the lowest window sill on the second #story#.

* * *

32-60
SIGN REGULATIONS

* * *

32-62
Permitted Accessory Business Signs

C1 C2 C3 C4 C5 C6 C7 C8

In all districts, as indicated, #accessory business signs# other than #advertising signs# are permitted subject to the provisions of the following Sections:

Section 32-64  (Surface Area and Illumination Provisions)

1899

April 8, 1998                                    1132

Section 32-65  (Permitted Projection or Height of Signs)

Section 32-67  (Special Provisions Applying along District Boundaries)

Section 32-68  (Permitted Signs on Residential Buildings)~~--~~

Section 32-69  (Additional ~~Accessory Business~~ Sign Regulations for Adult Estab-
lishments)

However, notwithstanding any provision of this Section, flags, banners or pennants
other than those that are #advertising signs#, located on any #zoning lot# used primarily
for #community facility uses# of a civic, philanthropic, educational or religious nature,
are permitted in all districts, as indicated, without limitation.

* * *

32-64
Surface Area and Illumination Provisions

C1 C2 C3 C4 C5 C6 C7 C8

In all districts, as indicated, all permitted #signs# shall be subject to the restrictions
on #surface area# and illumination as set forth in this Section, provided that the follow-
ing #signs# shall be exempted from such restrictions on #surface area#:

#Illuminated# non-#flashing ~~business~~ signs# other than #advertising signs# located
in a window within a #building#, with a total #surface area# not exceeding eight
square feet on any #zoning lot# and limited to not more than three such #signs# in
any window.

For the purpose of determining permitted #surface area# of #signs# for #zoning lots#
occupied by more than one establishment, any portion of such #zoning lot# occupied by
a #building# or part of a #building# accommodating one or more establishments on the
ground floor may be considered as a separate #zoning lot#.

* * *

32-645
Illuminated or flashing signs in C8 Districts

C8

In the district indicated, #illuminated# or #flashing ~~business~~ signs#, other than
#advertising signs#, and ~~or~~ #advertising signs# with indirect illumination , are permit-
ted, provided that the total #surface area# of all such #signs# (in square feet) shall not
exceed five times the #street# frontage of the #zoning lot# (in feet) and that the #surface
area# of each #sign# shall not exceed 500 square feet.

* * *

1133                                                          April 8, 1998

32-651
Permitted projection in C6-5, C6-7 or C7 Districts

C6-5 C6-7 C7

    In the districts indicated, except as otherwise provided in Section 32-653 (Additional regulations for projecting ~~business~~ signs), no permitted #sign# shall project across a #street line# more than eight feet.

32-652
Permitted projection in all other Commercial Districts

C1 C2 C3 C4 C5 C6-1 C6-2 C6-3 C6-4 C6-6 C6-8 C6-9 C8

    In the districts indicated, except as otherwise provided in Section 32-653 (Additional regulations for projecting ~~business~~ signs), no permitted #sign# shall project across a #street line# more than 18 inches for double- or multi-faceted #signs# or 12 inches for all other #signs#.

32-653
Additional regulations for projecting ~~business~~ signs

C1 C2 C3 C4 C5 C6 C7 C8

    In all districts, as indicated, permitted ~~#accessory business~~ signs# other than #advertising signs# may be displayed as follows:

(a) Non-#illuminated signs# may be displayed on awnings or canopies permitted by Section 27-313(b) of the Administrative Code, with a #surface area# not exceeding 12 square feet and with the height of letters not exceeding 12 inches . ~~, provided that~~ Any commercial copy on such #signs# shall be limited to identification of the name or address of the #building# or an establishment contained therein.

(b) #Signs# may be displayed on marquees permitted by Section 27-313(b) of the Administrative Code, provided that such #signs# conform to the provisions of Section 26-182 of the Administrative Code, and provided further that no such #sign# in a district other than a C6-5, C6-7 or C-7 District shall project more than 48 inches above nor more than 12 inches below such marquee.

* * *

32-661
Advertising signs on waterways

    No moving or stationary  # advertising sign #  shall be displayed on a vessel plying waterways adjacent to #Commercial Districts# and within view from an arterial highway. For the purposes of this Section, arterial highways shall include all highways which are shown on the Master Plan of Arterial Highways and Major Streets as "principal routes," "parkways," or "toll crossings" and which have been designated by the City Planning Commission as arterial highways to which the provisions of this Section shall apply.

1901

April 8, 1998                                    1134

For the purposes of this Section #advertising sign# is a #sign# which directs atten-
tion to a profession, business, commodity, service or entertainment conducted, sold, or
offered elsewhere than upon the premises of the vessel, ~~and shall not include signs, sym-~~
~~bols or flags identifying the vessel, its owner or operators~~ and is not #accessory# to a
#use# on such vessel.

32-67
Special Provisions Applying along District Boundaries

C2 C3 C4 C5 C6 C7 C8

In the districts indicated, and within 100 feet of the #street line# of any #street# or
portion thereof in which the boundary of an adjoining #Residence District# is located, or
which adjoins a #public park# of one-half acre or more, ~~all #signs#~~ no #advertising sign#
which faces at an angle of less than 165 degrees away from such #Residence District# or
park boundary shall be permitted and all other #signs# facing at less than such an angle
~~limited to #accessory business signs# and~~ shall conform with all the #sign# regulations
applicable in C1 Districts as set forth in Sections 32-61 to 32-68, inclusive, relating to
Sign Regulations.

32-68
Permitted Signs on Residential or Mixed Buildings

C1 C2 C3 C4 C5 C6

In the districts indicated, any #use# listed in Use Group 1 or 2 shall conform to the
#sign# regulations for #Residence Districts# set forth in Sections 22-31 to 22-34, inclu-
sive. In #residential# or #mixed buildings#, #residential sign# regulations shall apply to
a #building# or part of a #building# used for #residential# purposes.

Where non-#residential uses# are permitted to occupy two floors of the #building#,
all #signs accessory# to non-#residential uses# located on the second floor shall be non-
#illuminated ~~business~~ signs#, and shall be located below the level of the finished floor of
the third #story#.

32-69
Additional ~~Accessory Business~~ Sign Regulations for Adult Establishments

C6-4 C6-5 C6-6 C6-7 C6-8 C6-9 C7 C8

~~#Accessory business signs#~~ #Signs#, other than #advertising signs#, for #adult
establishments# are permitted only as set forth in this Section and are limited to locations
in the districts indicated.

All permitted ~~#accessory business~~ signs#, other than #advertising signs#, for #adult
establishments# shall conform with all the #sign# regulations applicable in C1 Districts
as set forth in this Chapter, except that the provisions of Section 32-64 (Surface Area and
Illumination Provisions) shall not apply. In lieu thereof, the maximum #surface area# of
all ~~#accessory business~~ signs#, other than #advertising signs#, for #adult establishments#

1135                                                                April 8, 1998

shall not exceed, in the aggregate, three times the #street# frontage of the #zoning lot#, but in no event more than 150 square feet per establishment, of which no more than 50 square feet may be #illuminated# non-#flashing signs#.

* * *

36-56
Screening

C1 C2 C3 C4 C5 C6 C7 C8

* * *

(d)  have no #signs# hung or attached thereto other than those permitted in Sections 32-62 (Permitted ~~Accessory Business~~ Signs) or 32-63 (Permitted Advertising Signs).

* * *

36-685
Screening

C1 C2 C3 C4 C5 C6 C7 C8

* * *

(d)  shall have no #signs# hung or attached thereto other than those permitted in Sections 32-62 (Permitted ~~Accessory Business~~ Signs) or 32-63 (Permitted Advertising Signs).

* * *

37-011
Applicability of Section 37-01

* * *

An application to the Department of Buildings for a permit respecting any new #development# shall include a plan and an elevation drawn to a scale of at least one sixteenth inch to a foot of the new #building# and #buildings# on #contiguous lots# or #contiguous blocks# showing ~~accessory business~~ signs#, other than #advertising signs#, #arcades#, #street wall# articulation, curb cuts, #street# trees, sidewalk paving, central refuse storage area and such other necessary information as may be required by the Commissioner of Buildings.

* * *

37-014
Modifications to applicability of Article II, Chapter 6

In C1-8, C1-9, C2-7, C2-8, C4-6, C5-1, C5-2, C5-4, C6-3, C6-4, C6-5 and C6-8 Districts, or C1 or C2 Districts mapped within R9 or R10 Districts, the regulations of Article II, Chapter 6, applicable to #residential developments# or #developments# occupied by a #predominantly residential use# are modified by the provisions of Sections 37-015

1903

April 8, 1998                                1136

(Retail continuity) and 37-016 (~~Accessory business signs~~Sign regulations) and 37-017 (Street wall articulation).

\* \* \*

37-016
~~Accessory business signs~~Sign regulations

In addition to the applicable district regulations in C1-8, C1-9, C2-7, C2-8, C4-6 Districts and C1 or C2 Districts mapped within R9 or R10 Districts, all #~~accessory business~~ signs#, other than #advertising signs# and ~~other than~~ window #signs#, shall be located in a horizontal band not higher than 3 feet, the base of which is located not higher than 17 feet above #curb level#.  Where there is a grade change of at least 1.5 feet in 100 along the portion of the #street# upon which the #development# fronts, such signage band may be staggered along such #street#.

\* \* \*

42-50
SIGN REGULATIONS

\* \* \*

42-52
Permitted ~~Accessory Business Signs or Advertising~~ Signs

M1 M2 M3

In all districts, as indicated, #~~accessory business~~ signs# ~~or #advertising signs#~~ are permitted with no restriction on size, illumination or otherwise, except as otherwise provided in Section 42-53 (Additional Regulations for Advertising Signs), 42-54 (Special Provisions Applying along District Boundaries) and subject to the provisions of Section 42-55 (Additional ~~Accessory Business~~ Sign Regulations for Adult Establishments).

\* \* \*

42-53
Additional Regulations for Advertising Signs

M1 M2 M3

In all districts, as indicated no #advertising sign# shall be located, nor shall an existing #advertising sign# be structurally altered, relocated, or reconstructed, within 200 feet of an arterial highway or of a #public park# with an area of one-half acre or more, if such #advertising sign# is within view of such arterial highway or #public park#.  For the purposes of this Section, arterial highways shall include all highways which are shown on the Master Plan of Arterial Highways and Major Streets, as "principal routes," "parkways," or "toll crossings," and which have been designated by the City Planning Commission as arterial highways to which the provisions of this Section shall apply.  Beyond 200 feet from such arterial highway or #public park#, an #advertising sign# shall be located at a distance of at least as many linear feet therefrom as there are square feet of

1137                                    April 8, 1998

#surface area# on the face of such #sign#.  However, in all districts as indicated, the more
restrictive of the following shall apply:

(a)  Any #advertising sign# erected, structurally altered, relocated or reconstructed prior
to June 1, 1968, within 660 feet of the nearest edge of the right-of-way of an arteri-
al highway, whose message is visible from such arterial highway, shall have legal
#non-conforming use# status pursuant to Section 52-83, to the extent of its size exist-
ing on May 31, 1968.

(b)  Any #advertising sign# erected, structurally altered, relocated or reconstructed
between June 1, 1968 and November 1, 1979, within 660 feet of the nearest edge of
the right-of-way of an arterial highway, whose message is visible from such arterial
highway, and whose size does not exceed 1200 square feet in #surface area# on its
face, 30 feet in height, and 60 feet in length, shall have legal #non-conforming use#
status pursuant to Section 52-83, to the extent of its size existing on November 1,
1979.  All #advertising signs# not in conformance with the standards set forth here-
in shall terminate.

42-531
Advertising signs on waterways

No moving or stationary #advertising sign# shall be displayed on a vessel plying
waterways adjacent to #Manufacturing Districts# and within view from an arterial high-
way.  For the purposes of this Section, arterial highways shall include all highways which
are shown on the Master Plan of Arterial Highways and Major Streets as "principal
routes," "parkways," or "toll crossings" and which have been designated by the City
Planning Commission as arterial highways to which the provisions of this Section shall
apply.

For the purposes of this Section, #advertising sign# is a #sign# which directs atten-
tion to a profession, business, commodity, service or entertainment conducted, sold, or
offered elsewhere than upon the premises of the vessel, and shall not include signs, sym-
bols or flags identifying the vessel, its owners or operators and is not #accessory# to a
#use# on such vessel.

42-54
Special Provisions Applying along District Boundaries

42-541
Restrictions along district boundary located in a street

M1 M2 M3

In all districts, as indicated, and within 100 feet of the #street line# of any #street#
or portion thereof in which the boundary of an adjoining #Residence District# is located,
or which adjoins a #public park# of one-half acre or more, #advertising signs# which face
at an angle of less than 165 degrees away from such #Residence District# or park bound-
ary shall not be permitted and all other #signs# facing at less than such an angle be lim-

1905

April 8, 1998                                    1138

~~ited to #accessory business signs# and~~ shall conform with all the #sign# regulations applicable in C1 Districts as set forth in Sections 32-61 to 32-68, inclusive, relating to Sign Regulations.

*  *  *

42-55
Additional ~~Accessory Business~~ Sign Regulations for Adult Establishments

M1 M2 M3

In all districts, as indicated, all permitted #~~accessory business~~ signs#, other than #advertising signs#, for #adult establishments# shall conform with the provisions of this Chapter, except that the maximum #surface area# of all #~~accessory business~~ signs#, other than #advertising signs#, for #adult establishments# shall not exceed, in the aggregate, three times the #street# frontage of the #zoning lot#, but in no event more than 150 square feet per establishment, of which no more than 50 square feet may be #illuminated# and no portion thereof may be #flashing#.

No #~~accessory business~~ signs# for #adult establishments# shall be permitted on the roof of any #building#, nor shall such #signs# extend above #curb level# at a height greater than 25 feet.

*  *  *

44-45
Screening

M1 M2 M3

*  *  *

(d)  shall have no #signs# hung or attached thereto other than those permitted in Section 42-52 (Permitted ~~Accessory Business Signs or Advertising~~ Signs).

*  *  *

44-585
Screening

M1 M2 M3

*  *  *

(3)  shall have no #signs# hung or attached thereto other than those permitted in Section 42-52 (Permitted ~~Accessory Business Signs or Advertising~~ Signs).

*  *  *

52-73
Non-Conforming Signs

*  *  *

1906

52-733
Advertising signs on waterways

On all waterways adjacent to #Residence#, #Commercial# or #Manufacturing Districts# and within view from an arterial highway, a #non-conforming advertising sign# may be continued for one year after July 23, 1964 if already in operation on April 15, 1964; provided that after the expiration of this period such #non-conforming advertising sign# shall terminate.

For the purposes of this Section #advertising sign# is a #sign# which directs attention to a profession, business, commodity, service or entertainment conducted, sold, or offered elsewhere than upon the premises of the vessel, ~~and shall not include signs, symbols or flags identifying the vessel, its owners or operators~~ and is not #accessory# to a #use# on such vessel.

52-734
Non-conforming ~~accessory business~~ signs for adult establishments

In all districts, a #non-conforming ~~accessory business~~ sign# for an #adult establishment# shall terminate within one year from October 25, 1995 or from such later date that such #sign# becomes #non-conforming#, except that such #sign# may be continued for a limited period of time by the Board of Standards and Appeals pursuant to Section 72-40 (AMORTIZATION OF CERTAIN ADULT ESTABLISHMENTS AND SIGNS FOR ADULT ESTABLISHMENTS).

* * *

52-80
REGULATIONS APPLYING TO NON-CONFORMING SIGNS

52-81
General Provisions

A #non-conforming sign# shall be subject to all the provisions of this Chapter relating to #non-conforming uses#, except as modified by the provisions of Section 52-82 (Non-Conforming ~~Business~~ Signs) and Section 52-83 (Non-Conforming Advertising Signs).

A change in the subject matter represented on a #sign# shall not be considered a change of #use#.

52-82
Non-Conforming ~~Business~~ Signs other than #Advertising Signs#

Any #non-conforming ~~accessory business~~ sign#, except a #flashing sign# or a #sign# subject to the provisions of Section 52-734 (Non-conforming ~~accessory business~~ signs for adult establishments), and except any #advertising sign# may be structurally altered, reconstructed, or replaced in the same location and position, provided that such structural alteration, reconstruction, or replacement does not result in:

April 8, 1998                                    1140

(a)  the creation of a new #non-conformity# or an increase in the degree of #non-confor-
     mity# of such #sign#;

(b)  an increase in the #surface area# of such #sign#; or

(c)  an increase in the degree of illumination of such #sign#.

However, any structural alteration, reconstruction or replacement of a #non-con-
forming sign accessory# to a #non-conforming use# shall be subject to the provisions of
Section 52-31 (General Provisions).

To the extent that such structural alteration, reconstruction, or replacement of #non-
conforming ~~accessory business~~ signs# is permitted under the provisions of this Section,
the provisions of the following Sections are modified:

Section 52-22 (Structural Alterations)

Sections 52-51 to 52-55, inclusive, relating to Damage or Destruction.

* * *

72-40
AMORTIZATION OF CERTAIN ADULT ESTABLISHMENTS AND SIGNS FOR
ADULT ESTABLISHMENTS

The Board of Standards and Appeals may permit any #non-conforming adult estab-
lishment# or any #non-conforming ~~accessory business~~ sign#, other than #advertising
sign#, for an #adult establishment# to continue for a limited period of time beyond that
provided for in Section 52-734 (Non-conforming accessory business signs for adult
establishments) or Section 52-77 (Termination of Adult Establishments), provided that:

* * *

73-211
Location in C2, C4, C6 or C7 Districts

* * *

(5)  that ~~#accessory business~~ signs#, other than #advertising signs#, shall be subject to
     the applicable district #sign# regulations, provided that:

* * *

73-241
In C1-1, C1-2, C1-3, C1-4, C2-1, C2-2, C2-3, C2-4, C3, C5, M1-5A or M1-5B Districts

* * *

The Board may modify the regulations relating to ~~#accessory business~~ signs# in C3
Districts to permit a maximum total #surface area# of 50 square feet of non-#illuminat-

1908

April 8, 1998

ed# or #illuminated# non-#flashing signs#, provided that any #illuminated sign# shall not be less than 150 feet from the boundary of any #Residence District#.  The Board shall prescribe appropriate controls to minimize adverse effects on the character of the surrounding area, including, but not limited to, location of entrances and operable windows; provision of sound-lock vestibules; specification of acoustical insulation; maximum size of establishment; kinds of amplification of musical instruments or voices; shielding of floodlights; adequate screening; curb cuts or parking.

73-242
In C3 Districts

* * *

The Board may modify the regulations relating to #accessory business signs# in C3 Districts to permit a maximum total #surface area# of 50 square feet of non-#illuminated# or #illuminated# non-#flashing signs#, provided that any #illuminated sign# shall not be less than 150 feet from the boundary of any #Residence District#.

* * *

73-25
Boatels

* * *

The Board may modify the regulations relating to #accessory business signs# in C3 Districts to permit a maximum total #surface area# of 50 square feet of non-#illuminated# or #illuminated# non-#flashing signs# on each of not more than three #street# or water frontages.

* * *

73-35
Amusement Arcades

* * *

(c)  that the #use# is so located within the shopping center that no entrance and no #accessory business# sign# fronts upon or faces a #street#.

* * *

74-47
Amusement Arcades

(c)  the #use# is so located within the #building# that no entrance nor any #accessory business# sign# of the amusement arcade fronts upon or faces a #street#.

* * *

April 8, 1998                                        1142

74-744
Modification of use regulations

* * *

(c)  Modifications of #~~accessory business~~ sign# regulations

In C6 Districts, the City Planning Commission may modify the regulations of Section 32-65 (Permitted Projection or Height of Signs) for #~~accessory business~~ signs#, other than #advertising signs#, on a non- #residential building#, provided that such #~~accessory~~ signs# will not be incompatible with the character of the surrounding area.

* * *

81-141
Special sign regulations

* * *

(b)  In a C5-3 District within the Fifth Avenue Subdistrict, the Chairperson of the City Planning Commission may, by certification, modify the requirements of Section 32-655 (Height of signs in all other Commercial Districts), to allow a single non-#illuminated ~~business~~ sign#, other than #advertising sign#, per #building# to be located at a height between 25 and 50 feet above #curb level# provided that the permitted #sign# shall:

* * *

82-24
Supplementary Sign Regulations

No permitted #~~business~~ sign# shall extend above #curb level# at a height greater than 20 feet or obstruct an #arcade#.

* * *

93-34
Accessory ~~Business~~ Signs

All #~~accessory business~~ signs#, other than #advertising signs# and ~~other than~~ window #signs#, shall be located in a horizontal band not higher than two feet, the base of which is located not less than 13 feet nor more than 16 feet above #curb level#.  Where there is a grade change of at least 1.5 feet in 100 feet along the portion of the #street# upon which the #development# fronts, such signage band may be staggered along such #street#.

* * *

1143                                              April 8, 1998

94-066
Additional sign regulations

   Where #illuminated signs# are permitted by the underlying district regulations, such #signs# shall have only indirect illumination. Where #business signs#, other than #advertising signs#, are permitted by the underlying district regulations, such #signs# shall not extend above the roof level of any #building or other structure# in the Special District.

* * *

97-112
Sign regulations

   All #signs# for Use Group M #manufacturing uses# within the R(M) #Special Northside Mixed Use District# shall be limited to #accessory business# signs#, other than #advertising signs#, and shall conform to regulations for C1 Districts as set forth in Sections 32-61 to 32-68 (Sign Regulations) inclusive, in this Resolution, except that no #illuminated signs# shall be permitted in the R(M) #Special Northside Mixed Use District#. In addition, no #sign# shall extend above the floor level of the second #story# above ground.

* * *

108-112
Sign regulations

   All #signs# for #manufacturing# or #commercial uses# within the #Special Franklin Street Mixed Use District# shall be limited to #accessory business# signs#, other than #advertising signs#, and shall conform to regulations for C1 Districts as set forth in Section 32-61 to 32-68 (Sign Regulations), inclusive, in this Resolution, except that no #illuminated signs# shall be permitted in the #Special Franklin Street Mixed Use District#. In addition, no #sign# shall extend above the floor level of the second #story# above ground.

* * *

109-24
Sign Regulations

   In addition to the underlying district #sign# regulations, the following regulations shall apply to all #signs#:

(a)  #accessory business# signs# may not occupy more than 25 percent of the total area of the storefront measured from #curb level# to 10 feet above #curb level#;

* * *

(c)  #accessory business# signs# may not cover columns, cornices or sills.

* * *

April 8, 1998                              1144

112-00
GENERAL PURPOSES

* * *

(c)  to maintain and protect the environmental quality and "village" character of City
     Island Avenue by imposing special controls on building setbacks and ~~accessory busi-
     ness~~ signs; and

* * *

112-123
Screening requirements for parking facilities accessory to commercial uses

* * *

(c)  shall have no #signs# hung or attached thereto other than those permitted in Section
     32-62 (Permitted ~~Accessory Business~~ Signs), Section 32-63 (Permitted Advertising
     Signs) or Section 42-52 (Permitted ~~Accessory Business~~ Signs or Advertising Signs).

* * *

115-046
Permitted projection of signs

     Except as otherwise permitted in Section 32-653 (Additional regulations for project-
ing ~~business~~ signs), no permitted #sign# shall project across a #street line# more than 12
inches.  Double or multifaced #signs# are not permitted.

* * *

117-423
~~Accessory business s~~Sign regulations

* * *

118-12
Sign Regulations

* * *

     #Signs# on #street walls# fronting on all other #streets# within the Special District
shall be subject to the provisions of Section 37-016 (~~Accessory business signs~~Sign regu-
lations).

* * *

121-20
SIGN REGULATIONS

     The following provisions apply on #wide streets# within the #Special Garment Cen-
ter District#:

April 8, 1998

    (a)  no ~~#accessory business#~~sign# ~~or #advertising sign#~~ shall project across the #street line# of a #wide street# more than 18 inches for double or multi-faced #signs# or 12 inches for other #signs#;

* * *

122-20
SPECIAL SIGN REGULATIONS

    In order to enhance the visual quality of the Special District, the applicable #sign# regulations of the underlying districts are modified as follows:

    (a)  Within the Limited Commercial Areas, only one ~~#accessory business#~~ sign#, other than an #advertising sign#, with a surface area not exceeding 12 square feet shall be permitted per #commercial use#.  ~~#Accessory business#~~ Such signs# shall be located in a #sign band#, on the flap of a canopy, or as allowed under Section 122-20(d).  The height of ~~an #accessory business#~~ such #signs# shall be not more than 24 inches and the letter sizes shall be restricted to a height of 12 inches.  Except as provided in Section 122-20(d), all such #signs# may not project from the vertical surface of a #building# more than 18 inches.

    (b)  Within the Commercial Extension Areas, no ~~#accessory business#~~ signs# and no #display windows# shall be permitted on a #building or other structure# within 50 feet of the Grand Concourse.  #Commercial uses# which are located on a cross-street beyond a distance of 50 feet from the Grand Concourse #street line#, shall comply with the #sign# regulations applicable to the underlying #Commercial District#.

    (c)  On Commercial Infill Sites, the maximum surface area to be occupied by ~~an #accessory business#~~ sign#, other than an #advertising sign#, shall be three square feet for every five feet of store frontage or 12 square feet, whichever is greater.  ~~#Accessory business#~~ Such #signs# shall be located in a #sign band# and/or on the flap of a canopy, or as allowed under Section 122-20(d).  On portions of Commercial Infill Sites more than 50 feet from the Grand Concourse, the signage regulations of a C1 District  shall apply.

    (d)  Except in C1 Districts, no #sign# may be located so as to obscure any decorative lintel, cornice or other architectural detail.  In the event that compliance with this requirement does not provide adequate surface area for the allowable ~~#accessory business#~~ sign# as defined in Section 122-20(a), a projecting #sign# may be permitted by the Commissioner of Buildings provided that no such #sign# shall project from the vertical surface of a #building# more than 18 inches.

    JUNE M. EISLAND, Chairperson; MARY PINKETT, ARCHIE SPIGNER, HERBERT E. BERMAN,  SHELDON S. LEFFLER, NOACH DEAR, JEROME X. O'DONOVAN, PRISCILLA A. WOOTEN, WALTER L. McCAFFREY, THOMAS K. DUANE, JOHN D. SABINI, ADOLPHO CARRION, LAWRENCE A. WARDEN, BILL PERKINS, MICHAEL J. ABEL—April 2, 1998

    On motion of the Speaker (Council Member Vallone), and adopted, the foregoing matter was coupled as a General Order for the day. (See ROLL CALL ON GENERAL ORDERS FOR THE DAY.)

# Exhibit 3-A

Resolution 2096-2001

662

THE COUNCIL OF THE CITY OF NEW YORK
RESOLUTION NO. 2096

Resolution approving the decision of the City Planning Commission on Application No. N 010508 ZRY, an amendment to the text of the Zoning Resolution regarding adult establishments (L.U. No. 1112).

By Council Members Eisland and McCaffrey

WHEREAS, the City Planning Commission filed with the Council on August 16, 2001 its decision dated August 8, 2001 (the "Decision"), on the application submitted by the Department of City Planning, pursuant to Section 201 of the New York City Charter, for an amendment to the text of the Zoning Resolution (Application No. N 010508 ZRY) (the "Application");

WHEREAS, the Decision is subject to review and action by the Council pursuant to Section 197-d(b)(1) of the City Charter;

WHEREAS, upon due notice, the Council held a public hearing on the Decision and Application on October 1, 2001;

WHEREAS, the Council has considered the land use implications and other policy issues relating to the Decision and Application; and

WHEREAS, the Council has considered the relevant environmental issues and the Negative Declaration, issued on March 26, 2001 (CEQR No. 01DCP054Y);

RESOLVED:

The Council finds that the action described herein will have no significant effect on the environment;

Pursuant to Sections 197-d and 200 of the City Charter and on the basis of the Decision and Application the Council approves the Decision; and

**Page 2 of 18**
**N 010508 ZRY**
**Reso. No. 2096 (L.U. No. 1112)**

The Zoning Resolution of the City of New York, effective as of December 15, 1961, and as subsequently amended, is further amended as follows:

\*\*\*

Matter in greytone is new, to be added;

Matter in ~~strikeout~~ is existing text, to be deleted;

\*\*\* indicates where unchanged text appears in the Resolution

**Section 12-10**

**DEFINITIONS**

\*\*\*

**Adult Establishment (10/25/95)**

1.      Adult Establishment:  An "adult establishment" is a commercial establishment ~~where a "substantial portion" of the establishment~~ which is or includes an adult book store, adult eating or drinking establishment, adult theater, or other adult commercial establishment, or any combination thereof as defined below:

**664**

(a)    An adult book store is a book store ~~which has as~~ that offers "printed or visual material" for sale or rent to customers where a "substantial portion" of its stock-in-trade of "printed or visual material" consists of "adult printed or visual material", defined as ~~any one or more of the following:~~

~~(1) books, magazines, periodicals or other printed matter which are characterized by an emphasis upon the depiction or description of "specified sexual activities" or "specified anatomical areas"; or~~

~~(2) photographs, films, motion pictures, video cassettes or other visual representations which are~~ "printed or visual material" characterized by an emphasis upon the depiction or description of "specified sexual activities" or "specified anatomical areas";

(b)    An adult eating or drinking establishment is an eating or drinking establishment which regularly features in any portion of such establishment any one or more of the following:

(1)    live performances which are characterized by an emphasis on "specified anatomical areas" or "specified sexual activities"; or

(2)     films, motion pictures, video cassettes, slides or other photographic reproductions

which are characterized by an emphasis upon the depiction or description of

"specified sexual activities" or "specified anatomical areas"; or

(3)     employees who, as part of their employment, regularly expose to patrons

"specified anatomical areas"; and

which is not customarily open to the general public during such features because it

excludes or restricts minors ~~by reason of age~~.

(c)     An adult theater is a ~~theater~~ commercial establishment which regularly features one or

more of the following:

(1)     films, motion pictures, videocassettes, slides or similar photographic

reproductions characterized by an emphasis on the depiction or description of

"specified sexual activities" or "specified anatomical areas"; or

(2)     live performances characterized by an emphasis on "specified anatomical areas"

or "specified sexual activities"; and

666

Page 5 of 18
N 010508 ZRY
Reso. No. 2096 (L.U. No. 1112)

which is not customarily open to the general public during such features because it

excludes or restricts minors ~~by reason of age~~.

An adult theater shall include commercial establishments where such materials or

performances are viewed from one or more individual enclosures.

(d)     An other adult commercial establishment is a facility — other than an adult book store,

adult eating or drinking establishment, adult theater, commercial studio, or business or

trade school — which features employees who as part of their employment, regularly

expose to patrons "specified anatomical areas" and which is not customarily open to the

general public during such features because it excludes or restricts minors ~~by reason of~~

~~age~~.

~~For the purpose of defining *adult establishments*,~~

2.      Defined Terms:

(a)     For purposes of paragraph (1) (a), "printed or visual materials" are books,

magazines, or other printed matter, including product packaging or wrapping, or

photographs, films, motion pictures, video cassettes, slides or other visual matter;

1919

Page 6 of 18
N 010508 ZRY
Reso. No. 2096 (L.U. No. 1112)

(b)     For purposes of paragraph (1)(a)(b) and (c), "specified sexual activities" are: (1 i)

human genitals in a state of sexual stimulation or arousal; (2 ii) actual or

simulated acts of human masturbation, sexual intercourse or sodomy; or (3 iii)

fondling or other erotic touching of human genitals, pubic region, buttock, anus or

female breast;

(c)     For purposes of paragraph (1)(a)(b)(c) and (d), "specified anatomical areas" are:

(1 i) less than completely and opaquely concealed: (i aa) human genitals, pubic

region,(ii bb) human buttock, anus, or (iii cc) female breast below a point

immediately above the top of the areola; or (2 ii) human male genitals in a

discernibly turgid state, even if completely and opaquely concealed.

~~For the purpose of determining whether a "substantial portion" of an establishment includes an~~

~~adult bookstore, adult eating or drinking establishment, adult theater, or other adult commercial~~

~~establishment, or combination thereof, the following factors shall be considered: (1) the amount~~

~~of *floor area* and *cellar* space accessible to customers and allocated to such *uses* and (2) the~~

~~amount of *floor area* and *cellar* space accessible to customers and allocated to such uses as~~

~~compared to the total *floor area* and *cellar* space accessible to customers in the establishment.~~

(d)     For the purpose of determining under paragraph (1)(a) whether a ~~bookstore has a~~

"substantial portion" of ~~its stock in materials defined in paragraphs (a)(1) or (a)(2)~~

**668**

~~hereof~~ a book store's stock-in-trade of "printed or visual" material consists of "adult printed or visual material", the following factors shall be considered: ~~(1)~~ (i) the amount of ~~such~~ stock of "adult printed or visual material" accessible to customers as compared to the total stock of "printed or visual material" accessible to customers in the establishment; and ~~(2)~~ (ii) the amount of *floor area* and *cellar* space accessible to customers containing ~~such~~ stock of "adult printed or visual material"; and ~~(3)~~ (iii) the amount of *floor area* and *cellar* space accessible to customers containing ~~such~~ stock "of adult printed or visual material" as compared to the ~~total amount of~~ *floor area* and *cellar* space accessible to customers ~~in the establishment containing "printed or visual material"~~ which is not "adult printed or visual material", provided that "printed or visual material" which is not "adult printed or visual material" (hereinafter for purposes of this paragraph "other printed or visual material") shall not be considered stock-in-trade for purposes of this paragraph where such store has one or more of the following features:

(aa)   An interior configuration and lay-out which requires customers to pass through an area of the store with "adult printed or visual material" in order to access an area of the store with "other printed or visual material";

(bb)   One or more individual enclosures where adult movies or live performances are available for viewing by customers;

(cc)   A method of operation which requires customer transactions with respect to "other printed or visual material" to be made in an area of the store which includes "adult printed or visual material";

(dd)   A method of operation under which "other printed or visual material" is offered for sale only and "adult printed or visual material" is offered for sale or rental;

(ee)   A greater number of different titles of "adult printed or visual material" than the number of different titles of "other printed or visual material";

(ff)   A method of operation which excludes or restricts minors from the store as a whole or from any section of the store with "other printed or visual material";

(gg)   A sign that advertises the availability of "adult printed or visual material" which is disproportionate in size relative to a sign that advertises the

670

availability of "other printed or visual material," when compared with the proportions of adult and other printed or visual materials offered for sale or rent in the store, or the proportions of floor area or cellar space accessible to customers containing stock of adult and other printed or visual materials;

(hh)   A window display in which the number of products or area of display of "adult printed or visual material" is disproportionate in size relative to the number of products or area of display of "other printed or visual material," when compared with the proportions of adult and other printed or visual materials offered for sale or rent in the store, or the proportions of floor area or cellar space accessible to customers containing stock of adult and other printed or visual materials;

(ii)   Other features relating to configuration and lay-out or method of operation, as set forth in rules adopted by the commissioner of buildings, which the commissioner has determined render the sale or rental of "adult printed or visual material" a substantial purpose of the business conducted in such store.  Such rules shall provide for the scheduled implementation of the terms thereof to commercial establishments in existence as of the

1923

Case 1:02-cv-04432-LJL-SDA  Document 69  Filed 03/15/19  Page 51 of 108

**671**

Page 10 of 18
N 010508 ZRY
Reso. No. 2096 (L.U. No. 1112)

date of adoption, as necessary.

(e)     For the purposes of paragraph (1) (b), an "eating or drinking establishment"

includes: (i) any portion of a commercial establishment within which food or

beverages are offered for purchase, or are available to or are consumed by

customers or patrons, and (ii) any portion of a commercial establishment from

which a portion of a commercial establishment described in (i) above is accessible

by customers or patrons.

\*\*\*

**32-01**

**Special Provisions for Adult Establishments**

\*\*\*

(b)     In C6-4, C6-5, C6-6, C6-7, C6-8, C6-9, C7 or C8 Districts, #adult

establishments# no #adult establishment# shall be located at least established less

than 500 feet from a church, a #school#, a #Residence District#, a C1, C2, C3,

C4, C5-1, C6-1, C6-2 or C6-3 District, or a #Manufacturing District#, other than

672

an M1-6M District, in which new #residences#, new #joint living-work quarters

for artists# or new #loft dwellings# are allowed, under the provisions of the

Zoning Resolution, as-of-right or by special permit or authorization. No

provisions or findings of such special permit or authorization which require an

assessment of the impact of new #residences#, new #joint living-work quarters for

artists# or new #loft dwellings# on #commercial# or #manufacturing uses# within

a #Manufacturing District# shall be construed as a limitation on the scope of this

provision.  However, on or after October 25, 1995, an #adult...

(c)     in C6-4, C6-5, C6-6, C6-7, C6-8, C6-9, C7 or C8 Districts, #adult establishments#

no #adult establishment# shall be located established at least less than 500 feet

from another a previously established #adult establishment#.

(d)     in C6-4, C6-5, C6-6, C6-7, C6-8, C6-9, C7, or C8 districts, no more than one

#adult establishment# permitted under this Section shall be located established on

a #zoning lot#.

***

(f)     #adult establishments# which existed on were established on the effective date...

1925

**673**

For purposes of this section, an #adult establishment# shall be established upon the date of a permit issued by the department of buildings therefor, or, in the case of an #adult establishment# in existence prior to August 8, 2001, as determined by the department of buildings, subject to rules as the department of buildings may prescribe regarding the failure to perform work authorized under a permit or to commence operation pursuant to a permit and the discontinuance of an #adult establishment#.

***

**42-01**

**Special Provisions for Adult Establishments**

***

(a)  #adult establishments# are not permitted in a #Manufacturing District# in which #residences#, #joint living-work quarters for artists# or #loft dwellings# are, under the provisions of the Zoning Resolution, allowed as-of-right or by special permit or authorization. No provisions or findings of such special permit or authorization which require an assessment of the impact of new #residences#, new #joint living-work quarters

**674**

for artists# or new #loft dwellings# on #commercial# or #manufacturing uses# within a
"Manufacturing District# shall be construed as a limitation on the scope of this provision.


(b)      In all other #Manufacturing Districts#, #adult establishments# no #adult establishment#

shall be ~~located established at least~~ less than 500 feet from a church, a #school#, a

#Residence District#, a C1, C2, C3, C4, C5-1, C6-1, C6-2 or C6-3 District, or a

#Manufacturing District#, other than an M1-6M District, in which new #residences#, new

#joint living-work quarters for artists# or new #loft dwellings# are allowed, under the

provisions of the Zoning Resolution, as-of-right or by special permit or authorization. No

provisions or findings of such special permit or authorization which require an

assessment of the impact of new #residences#, new #joint living-work quarters for

artists# or new #loft dwellings# on #commercial# or #manufacturing uses# within a

"Manufacturing District# shall be construed as a limitation on the scope of this provision.

However, on or after October 25, 1995, an #adult establishment# that otherwise complies

with the provisions of this paragraph shall not be rendered #non-conforming# if a church

or a #school# is established on or after April 10, 1995 within 500 feet of such #adult

establishment#.


(c)      ~~#Adult establishments#~~ No #adult establishment# shall be ~~located at least~~ established less

than 500 feet from another #adult establishment#.

Page 14 of 18
N 010508 ZRY
Reso. No. 2096 (L.U. No. 1112)

(d)     No more than one #adult establishment# permitted under this Section shall be ~~located~~ established on a #zoning lot#.

\*\*\*

(f)     #Adult establishment# which ~~existed on~~ were established on October 25, 1995 and conform to all provisions of the Zoning Resolution relating to #adult establishments# other than the provisions of all or any combination of paragraphs (c), (d), and (e) of this Section, shall not be subject to the provisions of Section 52-77 (Termination of Adult Establishments).

For purposes of this section, an #adult establishment# shall be established upon the date of a permit issued by the department of buildings therefor, or, in the case of an #adult establishment# in existence prior to August 8, 2001, as determined by the department of buildings, subject to rules as the department of buildings may prescribe regarding the failure to perform work authorized under a permit or to commence operation pursuant to a permit and the discontinuance of an #adult establishment#.

\*\*\*

**676**

**72-01**

**General Provisions**

\*\*\*

(f)    to make such administrative determinations and findings as may be set forth in this

Resolution or pursuant to Section 72-40 (AMORTIZATION OF CERTAIN ADULT

ESTABLISHMENTS AND SIGNS FOR ADULT ESTABLISHMENTS) ; or to Section

72-41 (Continuation of Certain Adult Establishments).

\*\*\*

**72-40**

**Amortization of Certain Adult Establishments and Signs For Adult Establishments**

\*\*\*

This section shall not apply to commercial establishments described in section 72-41.

\*\*\*

**72 - 41**

**Continuation of Certain Adult Establishments**

Page 16 of 18
N 010508 ZRY
Reso. No. 2096 (L.U. No. 1112)

Any commercial establishment in existence as of August 8, 2001 which: (i) subsequent to September 18, 1995 and prior to August 8, 2001 made financial expenditures so as to avoid becoming subject to the provisions of Section 32-01 or 42-01 (Special Provisions for Adult Establishments); and (ii) is defined as an #adult establishment# pursuant to the amendments to the definition of #adult establishment# in Section 12-10 adopted on (date of Council adoption), shall terminate as an #adult establishment# within one year from (date of Council adoption). Notwithstanding the foregoing, the Board of Standards and Appeals may permit such #adult establishment# to continue for a limited period beyond such one year period, provided that:

(b)      an application is made by the owner of such establishment to the Board of Standards and Appeals at least 120 days prior to the date on which such establishment must terminate;

(c)      the Board shall find, in connection with such establishment, that:

(1)      the applicant had made, subsequent to September 18, 1995 and prior to August 8, 2001, substantial financial expenditures so as to avoid becoming subject to the provisions of Section 32-01 or 42-01 (Special Provisions for Adult Establishments);

**678**

Page 17 of 18
N 010508 ZRY
Reso. No. 2096 (L.U. No. 1112)

(2)     the applicant has not recovered substantially all such financial

        expenditures; and


(3)     the period for which such establishment may be permitted to continue is

        the minimum period sufficient for the applicant to recover substantially all

        of such financial expenditures;

For purposes of this Section, "financial expenditures" shall mean the following: (i) any capital

outlay for improvements made in connection with the configuration or reconfiguration of the

amount of #floor area# and #cellar# space within such establishment accessible to customers

either: (a) containing books, magazines, periodicals or other printed matter or photographs, films,

motion pictures, video cassettes, slides or other visual matter characterized by an emphasis upon

the depiction or description of "specified sexual activities" or "specified anatomical areas"; or (b)

allocated to one of the activities described in paragraphs (b) (c) or (d) of section 1 of the

definition of #adult establishment# in Section 12-10; and (ii) any purchases of books, magazines,

periodicals, or other printed matter, or photographs, films, motion pictures, video cassettes, slides

or other visual matter, which are not characterized by an emphasis upon the depiction or

description of "specified sexual activities" or "specified anatomical areas".

The provisions of Sections 52-77 and 72-40 shall not apply to commercial establishments subject
to this Section.

**679**

Page 18 of 18
N 010508 ZRY
Reso. No. 2096 (L.U. No. 1112)


Adopted.

     Office of the City Clerk, }
     The City of New York,  } ss.:

       I hereby certify that the foregoing is a true copy of a Resolution passed by The Council of The City of New York on October 31, 2001, on file in this office.


City Clerk, Clerk of Council

# Exhibit 4-A

Relevant portions of NYC Council

Resolution 586-2004

# PROCEEDINGS

## OF THE
## COUNCIL
## OF THE
## CITY OF
## NEW YORK

# VOL. II

JULY 21, 2004
TO
DECEMBER 15, 2004

## PART I

# CERTIFICATE

### CITY OF NEW YORK

### OFFICE OF THE CITY CLERK

Pursuant to section forty-eight of the New York City Charter, I hereby certify that this volume was printed under my direction and that the contents thereof are correct and authentic transcripts of the original record of proceedings of the Council on file in this office.

VICTOR L. ROBLES
City Clerk, Clerk of the Council

Section forty-eight of the New York City Charter reads in part as follows:

§48 * * * The city clerk shall have charge of all the papers and documents of the city, except as are by law committed to the keeping of the several departments or of other officers. He shall keep the record of the proceedings of the council. * * * Copies of all papers duly filed in his office, and transcripts thereof, and of the records of the proceedings of the council and copies of the laws, ordinances and local laws of the city, certified by him under the corporate seal of the city, shall be admissible in evidence in all courts and places in the same manner and for the same purpose as papers or documents similarly authenticated by clerk of the county.* * *

3969                    September 9, 2004

In connection herewith, Council Members Katz and Avella offered the following resolution:

Res. No. 586

**Resolution approving the decision of the City Planning Commission on Application No. N̄ 040202 ZRY, an amendment to the text of the Zoning Resolution regarding community facilities (L.U. No. 236).**

By Council Members Katz and Avella.

**Whereas,** the City Planning Commission filed with the Council on July 28, 2004 its decision dated July 28, 2004 (the "Decision"), on the application submitted by the Department of City Planning and the City Council Land Use Committee, pursuant to Section 201 of the New York City Charter, for an amendment to the text of the Zoning Resolution (Application No. N 040202 ZRY) (the "Application");

**Whereas,** the Decision is subject to review and action by the Council pursuant to Section 197-d(b)(1) of the City Charter;

**Whereas,** upon due notice, the Council held a public hearing on the Decision and Application on August 9, 2004;

**Whereas,** the Council has considered the land use implications and other policy issues relating to the Decision and Application; and

**Whereas,** the Council has considered the relevant environmental issues and the Final Environmental Impact Statement ("FEIS") for which a Notice of Completion was issued on July 16, 2004 (CEQR No. 04DCP025Y);

**Resolved:**

Having considered the FEIS, with respect to the Application, the Council finds that:

(1)  The FEIS meets the requirements of 6 N.Y.C.R.R. Part 617;

(2)  From among the reasonable alternatives thereto, the action to be approved is one which minimize or avoid adverse environmental impacts to the maximum extent practicable; and

September 9, 2004                         3970

(3)  The adverse environmental impacts identified in the FEIS will be minimized or avoided to the maximum extent practicable by incorporating as conditions to the approval those mitigative measures that were identified as practicable;

(4)  The Decision and the FEIS constitute the written statement of facts, and of social, economic and other factors and standards that form the basis of this decision, pursuant to 6 N.Y.C.R.R. §617.11(d).

Pursuant to Sections 197-d and 200 of the City Charter and on the basis of the Decision and Application the Council approves the Decision; and

The Zoning Resolution of the City of New York, effective as of December 15, 1961, and as subsequently amended, is further amended as follows:

Matter <u>underlined</u> is new, to be added;
Matter in ~~strikeout~~ is old, to be deleted;
Matter within # # signs is defined in Section 12-10;
*** indicates where unchanged text appears in the Zoning Resolution
City Council's changes are indicated by **<u>bold and doubled underline</u>**

***

3987                        September 9, 2004
***

10/31/01

**32-01**
**Special Provisions for Adult Establishments**

In addition to the applicable regulations for the #uses# listed in a permitted Use Group, #adult establishments# shall be subject to the following provisions:

(a)  #Adult establishments# are not permitted in C1, C2, C3, C4, C5, C6-1, C6-2 or C6-3 Districts.

(b)  In C6-4, C6-5, C6-6, C6-7, C6-8, C6-9, C7 or C8 Districts, no #adult establishment# shall be established less than 500 feet from a ~~church~~ house of worship, a #school#, a #Residence District#, a C1, C2, C3, C4, C5-1, C6-1, C6-2 or C6-3 District, or a #Manufacturing District#, other than an M1-6M District, in which new #residences#, new #joint living-work quarters for artists# or new #loft dwellings# are allowed, under the provisions of the Zoning Resolution, as-of-right or by special permit or authorization. No provisions or findings of such special permit or authorization which require an assessment of the impact of new #residences#, new #joint living-work quarters for artists# or new #loft dwellings# on #commercial# or #manufacturing uses# within a #Manufacturing District# shall be construed as a limitation on the scope of this provision. However, on or after October 25, 1995, an #adult establishment# that otherwise complies with the provisions of this paragraph shall not be rendered #non-conforming# if a ~~church~~ house of worship or a #school# is established on or after April 10, 1995, within 500 feet of such #adult establishment#.

***

4003                              September 9, 2004

***

10/31/01

**42-01**
**Special Provisions for Adult Establishments**

In addition to the applicable regulations for the #uses# listed in a permitted Use Group, #adult establishments# shall be subject to the following provisions:

***

(b) In all other #Manufacturing Districts#, no #adult establishment# shall be established less than 500 feet from a ~~church~~ house of worship, a #school#, a #Residence District#, a C1, C2, C3, C4, C5-1, C6-1, C6-2 or C6-3 District, or a #Manufacturing District#, other than an M1-6M District, in which new #residences#, new #joint living-work quarters for artists# or new #loft dwellings# are allowed, under the provisions of the Zoning Resolution, as-of-right or by special permit or authorization. No provisions or findings of such special permit or authorization which require an assessment of the impact of new #residences#, new #joint living-work quarters for artists# or new #loft dwellings# on #commercial# or #manufacturing uses# within a #Manufacturing District# shall be construed as a limitation on the scope of this provision.

However, on or after October 25, 1995, an #adult establishment# that otherwise complies with the provisions of this paragraph shall not be rendered #non-conforming# if a ~~church~~ house of worship or a #school# is established on or after April 10, 1995, within 500 feet of such #adult establishment#.

***

4031                    September 9, 2004

\*\*\*

On motion of the Speaker (Council Member Miller), and adopted, the foregoing matter was coupled as a General Order for the day (see ROLL CALL ON GENERAL ORDERS FOR THE DAY).

# Exhibit 5-A

Relevant portions of NYC Council

Resolution 0499-2010

# PROCEEDINGS

## OF THE
## COUNCIL
## OF THE
## CITY OF
## NEW YORK

# VOL. II
# PART I

### JULY 29, 2010
### TO
### DECEMBER 20, 2010

# PROCEEDINGS

## OF THE

# COUNCIL

## OF

# THE CITY OF NEW YORK

## FROM

## JULY 29, 2010 TO DECEMBER 20, 2010

## VOLUME II



Published by Authority of The Council

# CERTIFICATE

## CITY OF NEW YORK

## OFFICE OF THE CITY CLERK

Pursuant to section forty-eight of the New York City Charter, I hereby certify that this volume was printed under my direction and that the contents thereof are correct and authentic transcripts of the original record of proceedings of the Council on file in this office.

Michael M. McSweeney
City Clerk, Clerk of the Council

Section forty-eight of the New York City Charter reads in part as follows:

§48 * * * The city clerk shall have charge of all the papers and documents of the city, except as are by law committed to the keeping of the several departments or of other officers.  He shall keep the record of the proceedings of the council. * * *  Copies of all papers duly filed in his office, and transcripts thereof, and of the records of the proceedings of the council and copies of the laws, ordinances and local laws of the city, certified by him under the corporate seal of the city, shall be admissible in evidence in all courts and places in the same manner and for the same purpose as papers or documents similarly authenticated by clerk of the county.* * *

October 13, 2010                    4268

_Report Summary_

## COMMITTEE RECOMMENDATION AND ACTION

**DATE:**  October 5, 2010

The Committee recommends that the Council approve the proposed resolution and thereby approve the decision of the City Planning Commission.

In connection herewith, Council Members Comrie and Weprin offered the following resolution:

Res. No. 499

**Resolution approving the decision of the City Planning Commission on Application No. N 100370 (A) ZRM, proposed for modification pursuant to Section 2-06 (c)(1) of the Uniform Land Use Review Procedure, for an amendment of the Zoning Resolution of the City of New York, concerning Article XI, Chapter I (Special Tribeca Mixed Use District), Borough Manhattan (L.U. No. 222).**

By Council Members Comrie and Weprin.

**WHEREAS,** the City Planning Commission filed with the Council on September 17, 2010 its decision dated September 15, 2010 (the "Decision"), pursuant to Section 201 of the New York City Charter, regarding an application submitted by the New York City Department of City Planning, and proposed for modification pursuant to Section 2-06 (c)(1) of the Uniform Land Use Review Procedure, for an amendment of the Zoning Resolution of the City of New York, concerning Article XI, Chapter I (Special Tribeca Mixed Use District) (Application No. N 100370 (A) ZRM), Borough of Manhattan (the "Application");

**WHEREAS,** the Application is related to Application Number C 100369 ZMM (L.U. No. 221), an amendment to the Zoning Map to replace the existing M1-5 zoning district with a new contextual C6-2A zoning district;

**WHEREAS,** the Decision is subject to review and action by the Council pursuant to Section 197-d(b)(1) of the City Charter;

4269                                    October 13, 2010

**WHEREAS,** upon due notice, the Council held a public hearing on the Decision and Application on October 5, 2010;

**WHEREAS,** the Council has considered the land use implications and other policy issues relating to the Decision and Application; and

**WHEREAS,** the Council has considered the relevant environmental issues and the Negative Declaration, issued on June 4, 2010 which included an e-designation (E-257) for hazardous materials, air quality and noise. On September 15, 2010, a Revised Negative Declaration was issued which reflects the modified application and minor corrections to the (E) Designation (CEQR No. 10DCP039M);

**RESOLVED:**

The Council finds that the action described herein will have no significant effect on the environment.

Pursuant to Sections 197-d and 200 of the City Charter and on the basis of the Decision and Application, and based on the environmental determination and consideration described in this report, N 100370(A) ZRM, incorporated by reference herein, the Council approves the Decision.

The Zoning Resolution of the City of New York, effective as of December 15, 1961, and as subsequently amended, is further amended as follows:

Matter in <u>underline</u> is new, to be added;

Matter in ~~strikeout~~ is to be deleted;

Matter with # # is defined in Section 12-10;

* * * indicates where unchanged text appears in the Zoning Resolution

4275                              October 13, 2010

* * *

**32-01**
**Special Provisions for Adult Establishments**

In addition to the applicable regulations for the #uses# listed in a permitted Use Group, #adult
establishments# shall be subject to the following provisions:

(a)     #Adult establishments# are not permitted in C1, C2, C3, C4, C5, C6-1, C6-2
or C6-3 Districts.

(b)     In C6-4, C6-5, C6-6, C6-7, C6-8, C6-9, C7 or C8 Districts, no #adult
establishment# shall be established less than 500 feet from a house of
worship, a #school#, a #Residence District#, a C1, C2, C3, C4, C5-1, C6-1,
C6-2 or C6-3 District, or a #Manufacturing District#, other than an M1-6M
District, in which new #residences#, or new #joint living-work quarters for
artists# or new #loft dwellings# are allowed, under the provisions of the
Zoning Resolution, as-of-right or by special permit or authorization. No
provisions or findings of such special permit or authorization which require
an assessment of the impact of new #residences#, or new #joint living-work
quarters for artists# or new #loft dwellings# on #commercial# or
#manufacturing uses# within a #Manufacturing District# shall be construed
as a limitation on the scope of this provision. However, on or after October
25, 1995, an #adult establishment# that otherwise complies with the
provisions of this paragraph shall not be rendered #non-conforming# if a
house of worship or a #school# is established on or after April 10, 1995,
within 500 feet of such #adult establishment#.

* * *

October 13, 2010                          4276

## 42-01
**Special Provisions for Adult Establishments**

In addition to the applicable regulations for the #uses# listed in a permitted Use Group, #adult establishments# shall be subject to the following provisions:

(a)     #Adult establishments# are not permitted in a #Manufacturing District# in which #residences#, or #joint living-work quarters for artists# or #loft dwellings# are, under the provisions of the Zoning Resolution, allowed as-of-right or by special permit or authorization. No provisions or findings of such special permit or authorization which require an assessment of the impact of new #residences#, or new #joint living-work quarters for artists# or new #loft dwellings# on #commercial# or #manufacturing uses# within a #Manufacturing District# shall be construed as a limitation on the scope of this provision.

(b)     In all other #Manufacturing Districts#, no #adult establishment# shall be established less than 500 feet from a house of worship, a #school#, a #Residence District#, a C1, C2, C3, C4, C5-1, C6-1, C6-2 or C6-3 District, or a #Manufacturing District#, other than an M1-6M District, in which new #residences#, or new #joint living-work quarters for artists# or new #loft dwellings# are allowed, under the provisions of the Zoning Resolution, as-of-right or by special permit or authorization. No provisions or findings of such special permit or authorization which require an assessment of the impact of new #residences#, or new #joint living-work quarters for artists# or new #loft dwellings# on #commercial# or #manufacturing uses# within a #Manufacturing District# shall be construed as a limitation on the scope of this provision. However, on or after October 25, 1995, an #adult establishment# that otherwise complies with the provisions of this paragraph shall not be rendered #nonconforming# if a house of worship or a #school# is established on or after April 10, 1995, within 500 feet of such #adult establishment#.

* * *

1948

October 13, 2010                    4308

* * *

LEROY G. COMRIE, Chairperson; JOEL RIVERA, DIANA REYNA,
CHARLES BARRON, ROBERT JACKSON, JAMES S. SANDERS JR., SARA
MA. GONZALEZ, ANNABEL PALMA, MARIA DEL CARMEN ARROYO,
INEZ E. DICKENS, DANIEL R. GARODNICK, JESSICA S. LAPPIN, ROSIE
MENDEZ, JAMES VACCA, BRADFORD S. LANDER, STEPHEN T. LEVIN,
MARK S. WEPRIN, JUMAANE D. WILLIAMS, VINCENT M. IGNIZIO,
DANIEL J. HALLORAN, PETER A. KOO, Committee on Land Use, October 7,
2010.

On motion of the Speaker (Council Member Quinn), and adopted, the foregoing
matter was coupled as a General Order for the day (see ROLL CALL ON
GENERAL ORDERS FOR THE DAY).

# Exhibit 82

Selected provisions from NYAC Title 28,

Article 101

## §28-101.1 Title.

The provisions of this chapter shall apply to the administration of the codes set forth in this title and the 1968 building code. This title shall be known and may be cited as the "New York city construction codes" and includes:

The New York city plumbing code.

The New York city building code.

The New York city mechanical code.

The New York city fuel gas code.

The New York city energy conservation code.

## §28-101.4.5 Work that increases existing floor surface area of a prior code building by more than 110 percent.

Notwithstanding sections 28-101.4.3 and 28-102.4.3 or any other provision of this code that would authorize alterations of prior code buildings in accordance with the 1968 building code or prior codes, where the proposed work at the completion of construction will increase the amount of floor surface area of a prior code building by more than 110 percent, over the amount of existing floor surface area, such entire building shall be made to comply with the provisions of this code as if it were a new building hereafter erected. See Section 28-105.2 for permits for such work.

**Exceptions:** When determining the amount of existing floor surface area for the purposes of section 28-101.4.5, the following shall be excluded from the measured square footage of floor surface area:

1. The square footage of floors removed during the course of the work when such floors are removed together with the supporting beams, joists, decking and slabs on grade.

2. The square footage of any floor that was installed together with the supporting beams, joists, decking and slabs on grade less than 12 months prior to submission of the application for construction document approval for the proposed work. For the purposes of this exception, floors installed pursuant to a work permit signed off less than 12 months before such submission shall not be counted as existing floor surface area.

# Exhibit 83

Selected provisions from NYAC Title 28,

Article 102

**§28-102.2 Other laws.**

The provisions of this code do not presumptively provide for matters that are contained in the charter, the labor law, the multiple dwelling law, the zoning resolution, or the general city law. Where there is conflict or inconsistency between the requirements of this code and other applicable laws and rules, unless otherwise required, such conflict shall be resolved in favor of the more restrictive requirement.

**§28-102.4 Existing buildings.**

The lawful use or occupancy of any existing building or structure, including the use of any service equipment therein, may be continued unless a retroactive change is specifically required by the provisions of this code or other applicable laws or rules.

# Exhibit 84

Selected provisions from NYAC Title 28,

Article 104

## §28-104.1 General.

The department shall not issue a permit pursuant to this code, or a place of assembly operation certificate pursuant to this code unless and until it approves all required construction documents for such work. The department shall not issue an electrical work permit pursuant to the New York city electrical code for fire and emergency alarm systems, solar panels and wind turbines unless and until it approves all required construction documents for such work. Such construction documents shall be prepared by or under the supervision of a registered design professional as required by this code. An application for an associated work permit shall not be submitted to the department until all required construction documents have been approved.

## §28-104.1.1 Construction documents subject to the New York city fire code.

Except as the New York city fire code may otherwise provide, the construction documents for facilities and systems for which the fire code provides design and installation requirements, including but not limited to fire alarm systems, flammable and combustible liquids, compressed gases, explosives and other hazardous materials; flammable spraying systems and facilities; automatic water sprinkler systems for hazardous material and combustible material storage, and non-water fire extinguishing systems, shall be subject to the review and approval of the fire commissioner in accordance with the New York city fire code. Approval by the department of construction documents for new or existing buildings containing such facilities and systems shall not be construed as approval of such systems and facilities.

## §28-104.2 Application for approval of construction documents.

The department shall assign an application number to and docket all applications for approval of construction documents and any amendments thereto filed with it. The department shall examine the construction documents promptly after their submission. The examination shall be made under the direction of the commissioner for compliance with the provisions of this code and other applicable laws and rules. The personnel employed for the examination of construction documents shall be qualified registered design professionals, experienced in

building construction and design. The department shall provide written notification to owners of adjoining property at the time such application is submitted.

## §28-104.2.7 Time period for review.

Completed construction documents complying with the provisions of this code and other applicable laws and rules shall be approved by the commissioner and written notice of approval shall be given the applicant promptly and no later than 40 calendar days after the submission of a complete application.

> **Exceptions:**
>
> 1. On or before the fortieth day, the commissioner may, for good cause shown and upon notification to the applicant, extend such time for an additional 20 calendar days.
>
> 2. Such time period for review shall commence in accordance with article 107 for single room occupancy multiple dwellings.

## §28-104.2.7.1 Notification of approval.

The department shall, on a weekly basis, send council members and community boards, by electronic mail, and post on its website, a copy of all notices of approval for applications sent to applicants during the prior week, disaggregated by community board, for:

> 1. A new building or an alteration that will require a new certificate of occupancy for a building; and
>
> 2. Work at a building or part thereof for which construction and related documents shall not be accepted with less than full examination by the department pursuant to the exception to section 28-104.2.1.

## §28-104.2.8 Notification of rejection.

Applications failing to comply with the provisions of this code and other applicable laws and rules shall be rejected and written notice of rejection, stating the grounds of rejection, shall be given the applicant promptly and not later than

the date required in section 28-104.2.7. The department shall, on a weekly basis, send council members and community boards, by electronic mail, a copy of all notices of a first rejection for applications for a new building or an alteration that will require a new certificate of occupancy for a building, sent to applicants during the prior week, disaggregated by community board. In addition, the department shall post such information on its website on a weekly basis.

## §28-104.6 Applicant.

The applicant for approval of construction documents shall be the registered design professional who prepared or supervised the preparation of the construction documents on behalf of the owner.

> **Exception:** The applicant may be other than a registered design professional for:
>
> 1. Limited oil burner/boiler alterations, limited plumbing alterations, limited sprinkler alterations, and limited standpipe alterations, where the applicant is licensed to perform such work pursuant to this code;
>
> 2. Demolition applications other than those specified in section 3306.5 of the New York city building code, where the applicant is the demolition contractor performing such demolition. In such cases, the commissioner may require structural plans designed by a registered design professional to address any critical structural, sequencing or site safety items;
>
> 3. Elevator applications;
>
> 4. Applications for work falling within the practice of landscape architecture as defined by the New York state education law, including but not limited to landscaping and vegetation plans, tree protection plans, erosion and sedimentation plans, grading and drainage plans, curb cuts, pavement plans, and site plans for urban plazas and parking lots, where the applicant is a landscape architect. Landscape architects shall not file plans for stormwater management and plumbing systems;
>
> 5. Other categories of work consistent with rules promulgated by the commissioner.

## §28-104.7.11 Additional information.

In addition to the data and information specified in this code and the rules of the department, the commissioner is authorized to require the submission of additional plans, surveys, computations, analyses, test reports, photographs, special inspection and such other data and information as may be necessary to determine compliance with this code and other applicable laws and rules.

## §28-104.7.12 Waiver of certain documents.

The commissioner is authorized to waive the submission of any of the required construction documents and other data if review of such documents is not necessary to ascertain compliance with this code or not required for the phase of work for which a permit is sought.

## §28-104.8.1 Applicant statements.

The application shall contain the following signed and sealed statements by the applicant:

1. A statement certifying that the applicant is authorized by the owner to make the application and certifying that, to the best of the applicant's knowledge and belief, the construction documents comply with the provisions of this code or the 1968 building code, if applicable, and other applicable laws and rules; if there exist practical difficulties in the way of carrying out the strict letter of the code, laws or rules, the applicant shall set forth the nature of such difficulties in such signed statement;

2. A statement certifying (i) that the site of the building to be altered or demolished, or the site of the new building to be constructed, contains no occupied housing accommodations subject to rent control or rent stabilization under chapters 3 and 4 of title 26 of the administrative code, or (ii) that the owner has notified the New York state division of homes and community renewal of the owner's intention to file such plans and has complied with all requirements imposed by the regulations of such agency as preconditions for such filing; or (iii) that the owner has not notified such agency of the owner's intention to file because the nature and scope of the work proposed, pursuant to such regulations, does not require notification;

3. A professional certification; and

4. A statement certifying compliance with the New York city energy conservation code.

## §28-104.8.2 Owner statement.

The application shall contain a signed statement by the owner, and, in the case of cooperative or condominium forms of ownership, the application shall also contain a statement by the cooperative or condominium board, affirming that the applicant is authorized to make the application and, if applicable, acknowledging that construction and related documents will be accepted with less than full examination by the department based on the professional certification of the applicant. Such statement shall list the owner's full name and address, as well as the names of the principal officers, partners or other principals if a corporation, partnership or other entity. Principal officers of a corporation shall be deemed to include the president, vice presidents, secretary and treasurer. Where a current deed holder with a valid property interest or a court appointed entity or equivalent in charge of the property, or in the case of a cooperative or condominium unit, the cooperative or condominium board, notifies the department in writing that the applicant does not have authority to make the application, the department is authorized pursuant to section 28-104.2.10 to revoke approval of construction documents.

# Exhibit 85

Selected provisions from NYAC Title 28,

Article 105

### §28-105.1 General.

It shall be unlawful to construct, enlarge, alter, repair, move, demolish, remove or change the use or occupancy of any building or structure in the city, to change the use or occupancy of an open lot or portion thereof, or to erect, install, alter, repair, or use or operate any sign or service equipment in or in connection therewith, or to erect, install, alter, repair, remove, convert or replace any gas, mechanical, plumbing, fire suppression or fire protection system in or in connection therewith or to cause any such work to be done unless and until a written permit therefore shall have been issued by the commissioner in accordance with the requirements of this code, subject to such exceptions and exemptions as may be provided in section 28-105.4

### §28-105.2 Classification of work permits. For the purposes of this code, work permits shall be classified as follows:

**1. New building permits:** for the construction of new buildings, including as provided for in section 28-101.4.5.

**2. Alteration permits:** for the alteration of buildings or structures, including new and existing sign structures and partial demolition in conjunction with such buildings or structures.

**3. Foundation and earthwork permits:** for the construction or alteration of foundations, including earthwork, excavation, fill, and foundation insulation.
**4. Earthwork permits:** for work solely involving earthwork, excavation, or fill operations.

**5. Full demolition permits:** for the full demolition and removal of buildings or structures.

**6. Plumbing permits:** for the installation or alteration of plumbing and plumbing systems, including gas piping. Such permits shall include permits for limited plumbing alterations.

**7. Sign permits:** for the erection, installation or alteration of signs.

**8. Service equipment permits:** for the installation or alteration of service equipment, including but not limited to air conditioning and ventilating systems, boilers, elevators, escalators, moving walkways, dumbwaiters,

mobile boilers and mobile oil tanks. Such permits shall include permits for limited oil burner/boiler alterations.

**9. Temporary construction equipment permits:** for the erection, installation and use of temporary structures to facilitate construction and/or safety during construction, including but not limited to temporary fences, railings, catch platforms, over-the-sidewalk chutes, footbridges, sidewalk sheds, and scaffolds.

**10. Fire protection and suppression system permits:** for the installation and alteration of fire protection and suppression systems, including but not limited to sprinkler systems, standpipe systems, non-water systems, and fire suppression systems for commercial cooking equipment. Such permits shall include permits for limited sprinkler alterations and limited standpipe alterations.

**11. Crane and derrick permits:** for the use of power operated cranes and derricks during construction.

**§28-105.4.2.1 Definitions.** The following words and terms shall, for the purposes of this section 28-105.4.2 and as used elsewhere in this code, have the meanings shown herein.

**MINOR ALTERATIONS.** Minor changes or modifications in a building or any part thereof, excluding additions thereto, that do not in any way affect health or the fire or structural safety of the building or the safe use and operation of the service equipment therein. Minor alterations shall not include any of the work described as "work not constituting minor alterations or ordinary repairs."

**ORDINARY REPAIRS.** Replacements or renewals of existing work in a building, or of parts of the service equipment therein, with the same or equivalent materials or equipment parts, that are made in the ordinary course of maintenance and that do not in any way affect health or the fire or structural safety of the building or the safe use and operation of the service equipment therein. Ordinary repairs shall include the repair or replacement of any plumbing fixture, piping or faucets from any exposed stop valve to the inlet side of a trap. Ordinary repairs shall not include any of the work described as "work not constituting minor alterations or ordinary repairs."

**WORK NOT CONSTITUTING MINOR ALTERATIONS OR ORDINARY REPAIRS.** Minor alterations or ordinary repairs shall not include:

1. The cutting away of any load bearing or required fire rated wall, floor, or roof construction, or any portion thereof.

2. The removal, cutting, or modification of any beams or structural supports;

3. The removal, change, or closing of any required exit;

4. The addition, rearrangement, relocation, removal or replacement of any parts of the building affecting loading or exit requirements, or light, heat, ventilation, or elevator requirements or accessibility requirements, or any fire suppression or fire protection system;

5. Additions to, alterations of, or rearrangement, relocation, replacement, repair or removal of any portion of a standpipe or sprinkler system, water distribution system, house sewer, private sewer, or drainage system, including leaders, or any soil, waste or vent pipe, or any gas distribution system;

6. Any plumbing work other than the repair or replacement of plumbing fixtures, piping or faucets from the exposed stop valve to the inlet side of a trap;

7. The alteration or repair of a sign for which a permit is required; or

8. Any other work affecting health or the fire or structural safety of the building or the safe use and operation of the service equipment therein

**§28-105.5 Application for permit.** All applications for permits shall be submitted on forms furnished by the department. Applications shall include all information required by this code, other applicable law or the rules of the department. The applicant shall list any portions of the design that have been approved for deferred submittal in accordance with section 28-104.2.6. The application shall set forth an inspection program for the project. An application for a permit shall be submitted no later than 12 months after the approval of all required construction documents (other than those documents approved for deferred submittal). The department shall provide written notification to owners of adjoining property at the time such application is submitted.

**§28-105.5.1 Applicant for permit.** The applicant for a permit shall be the person who performs the work or who retains a subcontractor to do the work.

> **Exception:** For permits issued for plumbing work, fire protection and suppression work, and oil burner/boiler work, the applicant for such permits shall be the licensed master plumber, licensed master fire suppression piping contractor, or licensed oil-burning equipment installer, respectively, who performs the work.

**§28-105.5.2 Owner statement.** All applications for permits shall include a certification by the owner of the property for which the permit is sought stating the following:

1. A statement as to whether $25,000 or more in covered arrears, that are not currently in the appeals process, are owed to the city with respect to such property;

2. A statement as to whether the owners of the property owe, in aggregate, $25,000 or more in covered arrears to the city;

3. For each owner of the property:

> 3.1. The person's full name and business address;

> 3.2. A list of properties in the city for which the person owes covered arrears to the city and, for each such property, the amount of such covered arrears owed; and

> 3.3. A list of properties in the city for which the person is an owner;

4. If an exception to section 28-105.1.2 of the code applies to such owner, a description of such exception.

**§28-105.7 Time limitation of applications.** An application for a permit shall be deemed to have been abandoned 12 months after the date of its submission, unless such application has been diligently prosecuted after rejection in whole or in part, or a permit shall have been issued except that the commissioner may, for reasonable cause, and upon payment of all reinstatement fees as provided for in this code, grant extensions of time for additional 12-month periods.

**§28-105.8 Validity of permit**. The issuance or granting of a permit shall not be construed to be a permit for, or an approval of, any violation of any of the provisions of this code or of any other law or rule. Permits presuming to give authority to violate or cancel the provisions of this code or other law or rule shall not be valid. The issuance of a permit based on construction documents and other data shall not prevent the commissioner from requiring the correction of errors in the construction documents and other data. The commissioner is authorized to prevent any occupancy, use or work in violation of this code, the zoning resolution or other law or rule enforced by the department.

**§28-105.8.1 Duration of permit.** Permits may be issued for a period of up to two years unless otherwise limited by law.

**§28-105.9 Expiration.** All permits issued by the commissioner shall expire by limitation and become invalid if the permitted work or use is not commenced within 12 months from the date of issuance of the permit. Subsequent to the 12-month period following the issuance of the initial permit, all permits shall expire if the permitted work is suspended or abandoned for a continuous period of 12 months unless such permits expire earlier pursuant to applicable provisions of this code. The permit shall automatically expire upon the expiration of required insurance or if the applicant holds a license issued by the department upon the expiration or revocation of such license during the term of the permit.

> **Exception:** All permits for work in an area of special flood hazard shall comply with section G104 of appendix G of the New York city building code.

# Exhibit 86

Selected provisions from NYAC Title 28,

Article 116

### §28-116.1 General.

Construction or work for which a permit is required shall be subject to inspection in accordance with this code and such construction or work shall remain accessible and exposed for inspection purposes until the required inspection is completed. A satisfactory inspection by the department or the acceptance by the department of a satisfactory report of an inspection by an approved agency shall not be construed to be an approval by the department of a violation of the provisions of this code or of any other provision of law. It shall be the duty of the permit holder to cause the work to remain accessible and exposed for inspection purposes. The permit holder shall be liable for any expense entailed in the removal or replacement of any material required to allow inspection. The inspector shall supply a report of the results of each inspection.

### §28-116.2.1 Preliminary inspection.

Before approving construction documents, the commissioner is authorized to examine or cause to be examined structures or premises for which an application has been filed.

### §28-116.2.4 Final inspection.

There shall be a final inspection of all permitted work. Final inspections shall comply with sections 28-116.2.4.1 through 28-116.2.4.3.

### §28-116.4 Sign-off of completed work.

Upon submission of a satisfactory report of final inspection and all required submittal documents, the department shall document the sign-off of the project and issue a letter of completion, or, if applicable, a certificate of occupancy for the work. The owner shall take all necessary steps required by the department for the issuance of such letter of completion or certificate of occupancy within 1 year following the expiration of the last permit.

# Exhibit 87

Selected provisions from NYAC Title 28,

Article 117

## §28-117.1 Place of assembly certificate of operation.

It shall be unlawful to use or occupy any building or space, including an outdoor space, as a place of assembly without a certificate of operation issued by the commissioner. An application for a certificate of operation shall be made to the department in such form and containing such information as the commissioner shall provide. The department shall inspect every place of assembly space prior to the issuance of a certificate of operation. The commissioner shall not issue a certificate of operation unless the department determines that the space conforms substantially to the approved construction documents and to this code or the 1968 building code as applicable and that the certificate of occupancy authorizes such use. A certificate of operation shall not be issued to a place of assembly providing seating or other moveable furnishings unless the commissioner approves a plan conforming to this code or the 1968 building code as applicable and the rules of the department. Seating and other moveable furnishings shall be maintained at all times during occupancy in accordance with the approved plan. Any amendment of such plan shall be subject to the prior approval of the commissioner.

## §28-117.1.2 New certificate required.

The following changes to a place of assembly shall require a new place of assembly certificate of operation instead of an amendment filed in accordance with section 28-117.1.3:

1. For a department issued place of assembly permit or place of assembly certificate of operation that does not have a ninedigit job number, any change of zoning use group, assembly occupancy group A-1 through A-5, or any of the changes set forth in section 28-117.1.3.

2. For all other department issued place of assembly permits or place of assembly certificates of operation, any change of zoning use group or assembly occupancy group A-1 through A-5.

# Exhibit 88

Selected provisions from NYAC Title 28,

Article 118

## §28-118.1 General provisions.

No building or open lot shall be used or occupied without a certificate of occupancy issued by the commissioner. Issuance of a certificate of occupancy shall not be construed as an approval of a violation of the provisions of this code or of other applicable laws and rules.

## §28-118.3.1 Change of occupancy or use.

No building, open lot or portion thereof hereafter altered so as to change from one occupancy group to another, or from one zoning use group to another, either in whole or in part, shall be occupied or used unless and until the commissioner has issued a certificate of occupancy certifying that the alteration work for which the permit was issued has been completed substantially in accordance with the approved construction documents and the provisions of this code and other applicable laws and rules for the new occupancy or use.

## §28-118.3.2 Changes inconsistent with existing certificate of occupancy.

No change shall be made to a building, open lot or portion thereof inconsistent with the last issued certificate of occupancy or, where applicable, inconsistent with the last issued certificate of completion for such building or open lot or which would bring it under some special provision of this code or other applicable laws or rules, unless and until the commissioner has issued a new or amended certificate of occupancy.

## §28-118.3.3 Changes to exits.

No building hereafter altered so as to cause a major alteration to existing exits shall be occupied or used unless and until the commissioner has issued a certificate of occupancy certifying that the alteration work for which the permit was issued has been completed substantially in accordance with the approved construction documents and the provisions of this code and other applicable laws and rules.

1971

## §28-118.4.1 Applicant.

The application for a certificate of occupancy shall be made by or on behalf of the owner of the building or open lot; and if made by a person other than the owner, the application shall be accompanied by a signed statement of the applicant stating that the applicant is authorized by the owner to make the application. The full names and addresses of the owner, and applicant, and of the principal officers thereof, if a corporation, shall be stated in the application.

## §28-118.4.2 Statement of compliance.

When a certificate of occupancy for a new or altered building is applied for, the application shall be accompanied by a signed statement of the registered design professional of record or the superintendent of construction, as applicable, stating that such person has examined the approved construction documents and specifications of the building for which the certificate of occupancy is sought, and that, to the best of his or her knowledge and belief, the building has been erected or altered in accordance with the approved construction documents and specifications and, as erected or altered, complies with the provisions of this code and all other applicable laws and rules, except insofar as variations or variances therefrom have been legally permitted or authorized, specifying such variations or variances in such required statement.

## §28-118.6 Issuance of certificate of occupancy.

After the commissioner inspects the building or open lot and determines that the building or open lot conforms substantially to the approved construction documents and to the provisions of this code and other applicable laws and rules, the commissioner shall issue a certificate of occupancy that shall contain information including, but not limited to:

1. The building permit number.

2. The address of the structure.

3. Block and lot numbers pertaining to the zoning lot as of the date of issuance, as defined in section 12-10 of the New York city zoning resolution.

1972

4. The description of the structure for which the certificate is issued.

5. A statement that the described portion of the structure has been inspected for compliance with the requirements of this code.

6. The name and signature of the commissioner.

7. The code under which the permit was issued.

8. The use and occupancy, in accordance with this code and the zoning resolution.

9. The type of construction as defined in this code.

10. The design occupant load of floors and spaces.

11. Types of major fire suppression or alarm systems.

12. Any special stipulations and conditions of the building permit.

13. The maximum permissible live loads on the several floors of the building.

14. The number of parking spaces.

1973

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
689 EATERY CORP., etc., *et ano.,*               :

                             Plaintiffs,        :

                  - against -                        :        Civil Action No.
                                          02 CV 4431 (WHP)
THE CITY OF NEW YORK, et al.,               :

                         Defendants.   :
------------------------------------------------------------X
59 MURRAY ENTERPRISES INC., etc., *et al.,*        :

                             Plaintiffs,        :

                  - against -                        :        Civil Action No.
                                          02 CV 4432 (WHP)
THE CITY OF NEW YORK, et al.,               :

                         Defendants.   :
------------------------------------------------------------X
CLUB AT 60TH STREET, INC., etc., *et al.,*        :

                             Plaintiffs,        :

                  - against -                        :        Civil Action No.
                                          02 CV 8333 (WHP)
THE CITY OF NEW YORK,               :

                         Defendant.   :
------------------------------------------------------------X

**REPLY DECLARATION OF MICHAEL BERZAK RE PERMITTING ISSUES**
**<u>PRESENTED IN PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION</u>**

       MICHAEL BERZAK, hereby declares the following pursuant to 28 USC §1746:

       1.       I, Michael David Berzak, have personal knowledge of each of the facts stated

herein and would so testify if called as a witness.  I make this declaration to respond to

statements regarding the permitting issues in this case contained in the City's Response

1974

Memorandum and in its accompanying Declaration of DOB Deputy Borough Commissioner Rodney Gittens.

2.      The City correctly pointed out that all the specific New York City Administrative Code (NYCAC) provisions found in Title 27 of that Code which I referenced in my prior Permitting Declaration were repealed in 2008, and, with one exception discussed in paragraph 5 below, replaced by substantially equivalent provisions merely renumbered and transplanted to NYCAC Title 28.

3.      Notwithstanding the non-substantive code modifications identified in Mr. Gittens' declaration, all of the procedures – discriminatory and otherwise, and problems and delays I described in my initial Permitting Declaration (i.e., Declaration of Michael Berzak in Support of Permitting Issues Presented in Plaintiffs' Motion for Preliminary Injunction, commencing at Plaintiffs' Joint Appendix page number 105 in volume 4 of that Joint Appendix) remain accurate, and I reiterate them here.  The minor revisions of the NYCAC to re-number, re-word (without substantive change), and move those provisions from Title 27 to Title 28, had and have no effect on or relevance to my experiences dealing with New York City's Department of Buildings for over 24 years, as  expressed in my "Permitting Declaration." When I reviewed drafts of my Permitting Declaration in the summer and fall of 2018, as prepared by Plaintiffs' counsel, I did not realize that the references were to the provisions as they *had* appeared in Title 27, rather than as they currently appear in Title 28.  The reason for this is that my primary focus was on detailing my experiences with the Department of Buildings under the operative provisions and not to the specific provisions themselves.  My experiences were as I described, regardless of and completely unaffected by the numbering and location of the underlying code

sections.  My applications were dealt with by Building Department personnel as I detailed in my prior declaration, whether governed by Title 27 or Title 28.

4.     The only significant change for purposes of my prior Permitting Declaration effected by the above-referenced 2008 amendments to the New York City Administrative Code is that now-repealed section 27-191 imposed a specific time limit for issuance of *building permits* after an application complying with the "code and other applicable laws and regulations" had been submitted, i.e., after the Building Department had formally approved an application for "plan approval."  I have carefully examined the current version of the NYCAC.  I have not found either any replacement or other provision requiring that building permits be issued within a specific period after approval of plans or constructions documents.  As a result, somewhat ironically, the 2008 amendments made the permit issuance process even *less* subject to any objective time limits.

5.     With respect to the procedures and delays I described in my prior Permitting Declaration, I repeatedly experienced the delays and procedures described therein in connection with applications I made for building permits for businesses presenting adult entertainment, both before and after the enactment of the 2008 amendments, including four such applications since 2017.

6.     As noted in my previous permitting declaration, applications for 100% adult businesses are *always* preliminarily referred to DOB legal counsel for a determination of compliance with the relevant adult zoning standards.  This requirement of *pre-approval by DOB legal counsel, unique to adult businesses, adds literally months to the approval process.*  Mr. Gittens states that the complexities of the criteria for determining the legality of 60-40 businesses is what motivated the adoption of this requirement.  However, in my opinion, this statement is

3

suspect, since *every* application for 100% adult entertainment businesses I have submitted in the last 24 years has, without exception, first been sent to DOB legal counsel to ensure compliance with all adult zoning restrictions.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 7th day of March, 2018, within the United States of America, at New York, New York.

Michael Berzak

4

Exhibit C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
689 EATERY CORP., etc., *et ano.,*                    :

                                    Plaintiffs,       :

            - against -                               :        Civil Action No.
                                                               02 CV 4431 (WHP)
THE CITY OF NEW YORK, et al.,                         :

                                    Defendants.       :
---------------------------------------------------------------X
59 MURRAY ENTERPRISES INC., etc., *et al.,*           :

                                    Plaintiffs,       :

            - against -                               :        Civil Action No.
                                                               02 CV 4432 (WHP)
THE CITY OF NEW YORK, et al.,                         :

                                    Defendants.       :
---------------------------------------------------------------X
CLUB AT 60TH STREET, INC., etc., *et al.,*         :

                                    Plaintiffs,       :

            - against -                               :        Civil Action No.
                                                               02 CV 8333 (WHP)
THE CITY OF NEW YORK,                                 :

                                    Defendant.        :
---------------------------------------------------------------X

**DECLARATION OF G. RANDALL GARROU RE SOURCE OF CITY'S NYCAC
PROVISIONS UTILIZED BY PLAINTIFFS**

    G. RANDALL GARROU, hereby declares the following pursuant to 28 USC §1746:

    1.    I, G. Randall Garrou, am one of the attorneys of record for Plaintiffs Jacaranda

and Club at 60th, and I have personal knowledge of the facts stated herein.  I make this

declaration to respond to an observation made in footnote 1 at p. 3 of the Declaration of DOB

Deputy Borough Commissioner Rodney Gittens submitted herein by the City.

2. In that footnote, Mr. Gittens states the following:

> The Declaration of Michael Berzak . . . submitted in support of Club Plaintiffs' Memorandum of law In Support of Motion for Preliminary Injunction . . . and part of the Plaintiffs' Joint Appendix . . . incorrectly cites to sections of Title 27 of the Administrative Code for DOB's permitting provisions. Those sections were repealed and replaced by Local Law 33/2007 § 8, eff. July 1, 2008 and the permitting provisions are now found in Title 28 of the Administrative Code.

3. Despite Mr. Gittens' observation that the relevant sections in the New York City

Administrative Code ("Administrative Code" or "NYCAC") referenced by Plaintiffs had been

repealed in 2008 and restated in Title 28, starting on or about May 22, 2018, when I was

preparing the initial draft of Mr. Berzak's declaration addressing Plaintiffs' challenges to the

City's permitting procedures, and several times thereafter, I found those provisions in the

municipal code database maintained by American Legal Publishing.[1]   At that time, it did not

contain the 2008 amendments, nor any reference that the relevant sections had been repealed.

Based upon my extensive research efforts to ascertain, *inter alia*, the time limits (if any) for

administrative action – all of which were done online, I believe this to be the sole website where

the City publishes the entirety of its Administrative Code.  As such, although the City amended

its Administrative Code in 2008, it (or its publisher) apparently failed to update it online until

approximately a decade after the 2008 changes.  I do not recall when I last viewed that website

prior to the filing of Plaintiffs' preliminary injunction moving papers in November of 2018, but I

am certain that when I last viewed it before filing those papers, it still included the old repealed

articles from Title 27 with no indication of their repeal.

---

[1] http://library.amlegal.com/nxt/gateway.dll/New%20York/admin/newyorkcityadministrativecode?f=templates$fn=default.htm$3.0$vid=amlegal:newyork_ny

4.      Based on numerous conversations I had with Mr. Berzak and additional notes he sent me, I prepared the draft of Mr. Berzak's declaration summarizing all his experiences interacting with the DOB.  However, I was solely responsible for drafting the specific quotations and other references from Title 27 of the Administrative Code which appear in his declaration.

5.      Based upon what I had downloaded from that website last year and my belief that those downloaded materials were current, I not only referenced those sections in preparing Mr. Berzak's declaration, but also assembled what I believed to be the current NYCAC provisions from Title 27 (i.e., Articles 9, 10, 19 and one section from Article 22) as Exhibits 16 through 19 to the Club Plaintiffs' Request to Take Judicial Notice.

6.      My first awareness that this website had been modified to reflect the 2008 repeal of these provisions (and to remove the text which I viewed on that site last summer) happened when I read Mr. Gittens' Declaration in the City's recent response papers.  I then returned to the American Legal Publishing website and confirmed that, in fact, it no longer showed the contents of these portions of Title 27 but, instead, followed a reference to each such repealed Article in its directory with just the word "(Repealed)."

7.      As Mr. Gittens acknowledges, the slight modifications of the relevant NYCAC provisions which occurred in their transfer from former NYCAC Title 27 to Title 28 in 2008 did not alter, in any relevant way, the substance of any of the challenged provisions setting forth the permit and plan approval procedures to be followed by the Department, with one small but very significant exception.  Following the 2008 amendments, the NYCAC no longer has a specific time limit requiring the DOB to issue a building permit within any specific number of days following plan approval.

I declare under penalty of perjury that the foregoing is true and correct.

3

1980

Executed this 15th day of March, 2018, within the United States of America, at Los Angeles, California.

                                        /s/ G. Randall Garrou
                                        G. Randall Garrou